EL PUEBLO *v.* ACEVEDO.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 412.—Resuelto en abril 8, 1912.

DERECHO PENAL—HURTO DE MENOR CUANTÍA.—De acuerdo con nuestras leyes penales para que exista el delito de hurto de menor cuantía no es necesario probar que el acusado recibió los objetos robados de manos del mismo ladrón o de su cómplice.

ID.—RECIBO DE OBJETOS ROBADOS—CARACTERÍSTICA DEL DELITO.—La característica del delito de hurto por recibir objetos robados es el haberlos recibido sabiendo que habían sido robados, de manos de cualquier persona, no siendo requisito esencial el recibirlos de manos de persona que los robó o que sabía que habían sido robados.

ID.—CONOCIMIENTO DE QUE LOS OBJETOS ERAN ROBADOS—PRUEBA CIRCUNSTANCIAL.—Examinada la prueba presentada en este caso resulta que los revólveres robados fueron enviados al acusado por un traficante de artículos usados, y llevaban marcadas las letras P. I. demostrativas de que pertenecían a la Policía Insular, señas bien conocidas en al Isla aun por los que no saben leer, y estas circunstancias juntas con la de hallarse los revólveres en posesión del

acusado poco después de haber sido robados, demuestran claramente su culpabilidad.

ID.—RECIBO DE OBJETOS ROBADOS—INTENCIÓN MALICIOSA.—Examinadas las circunstancias que concurrieron en la comisión del delito que se persigue en el caso de autos es indudable que el acusado recibió los objetos robados con intención maliciosa.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Eugénio Benítez Castaño.*

Abogado del apelado: *Sr. Charles E. Foote, Fiscal.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

La presente es una causa por hurto de menor cuantía. De acuerdo con nuestro Código Penal, según se define, determina y castiga en el Capítulo V del Título XVII, el delito de hurto comprende varias ofensas que no serían consideradas como tales en la ley común. El delito se divide en hurto de mayor y de menor cuantía, según las circunstancias del acto de sustraer y la naturaleza y valor de la propiedad robada. Cuando la propiedad es sustraída de otra persona, o consiste en ciertos animales domésticos, o el valor de la misma es de cincuenta dollars o más, el delito es hurto de mayor cuantía; todos los demás actos de robo se clasifican como hurtos de menor cuantía.

Con arreglo al artículo 438 del Código Penal, según ha sido enmendado por la ley de 7 de marzo, 1908 (Leyes de la Sesión de 1908 pág. 93), el recibir una propiedad robada sabiendo que fué hurtada, se castiga como hurto, con prisión en cárcel por un año o menos, o con presidio por un término que no exceda de cinco años, cuando el valor de la cosa fuere o excediera de cincuenta dollars, o de menos de esa suma. Este delito puede por lo tanto considerarse según nuestro estatuto, como una especie de hurto, y si el valor de la propiedad que se recibe teniendo conocimiento de que ha sido hurtada es menor de cincuenta dollars, puede clasificarse como hurto de menor cuantía, y constituye un delito menos grave (*misdemeanor*).

En 15 de diciembre de 1911, el acusado fué declarado cul-

pable y condenado a sufrir seis meses de prisión y al pago de las costas. Contra esa sentencia se interpuso inmediatamente apelación para ante este tribunal. Después de alguna demora motivada por el mismo apelante, se celebró la vista de esta apelación el día 12 de los corrientes, concediéndose a las partes cinco días para presentar alegatos adicionales, los que fueron presentados.

El fundamento de la apelación, según puede verse de los autos, que comprenden los alegatos, es que los hechos probados en el juicio no demuestran que el acusado cometiera el delito que se le imputó. Tanto el representante del Pueblo como el del acusado están conformes en que para que pueda declararse culpable al acusado, del delito que se le imputó, debe probarse:

1°. Que los revólveres habían sido robados anteriormente por alguna otra persona;

2°. Que el acusado los compró o recibió de otra persona;

3°. Que al comprarlos o recibirlos sabía que habían sido robados;

4°. Que los compró o recibió con un fin malicioso.

Todas las pruebas que aparecen en los autos han sido examinadas, discutidas y analizadas en los alegatos. Cada una de las partes presentaron cuatro testigos, además del acusado que declaró como testigo en su propia defensa.

I. No puede en buena lógica dudarse que por lo menos dos de los revólveres fueron robados del departamento de la Policía Insular. Esto no ha sido controvertido debidamente, y no hay que tratar de este punto con más extensión.

*People* v. *Clausen,* 120 Cal., 383.

II. Ni puede negarse tampoco que el acusado recibió los revólveres de otra persona. El propio acusado y otros testigos convienen en afirmar este hecho. Con arreglo a nuestro estatuto no es preciso probar que el acusado recibió los objetos robados de manos del mismo ladrón, o de su cómplice. Se ha citado a Wharton como una autoridad para sostener la teoría de que es necesario acreditar este hecho. Pero este

tratadista no enuncia esta doctrina como una de aplicación general, y otras autoridades no la consideran como tal.

Clark y Marshal discuten la cuestión de modo muy claro, y pueden citarse.

"Se ha dicho sin justificación alguna, que para que una persona pueda ser declarada culpable de recibir artículos robados, debe recibirlos del ladrón, o de algún agente del ladrón que no tenga conocimiento del robo, y no de una persona que los recibe teniendo conocimiento de que han sido robados; y la razón que se aduce es que en sus manos, y en lo que a él respecta, los artículos no son robados. Pero esto no es cierto de acuerdo con todos los estatutos. Según la ley común el delito no se comete por el que recibe objetos robados del que los recibió con conocimiento de que habían sido robados, y quien no conoce al ladrón, pues en tal caso no hay ocultación del delito ni ayuda en la comisión del mismo. Así, cuando el que recibe los objetos puede ser castigado como cómplice del ladrón después del hecho, y según los primitivos estatutos ingleses, y los semejantes de este país, los objetos deben recibirse del ladrón. Pero cuando el acto de recibirlos se considera como una ofensa substantiva, ya fuere un delito grave o *misdemeanor*, según el actual estatuto inglés, y la mayoría de los de este país, sin tener en cuenta a la persona que robó la propiedad, la característica del delito es el recibir y tener una propiedad que ha sido robada, sabiendo que ha sido robada; y no hay motivo alguno por el que no deba considerarse que el delito ha sido cometido por cualquiera que reciba dicha propiedad, teniendo bastante conocimiento de que ha sido robada, ya la reciba directamente del ladrón, o de la persona que la recibió teniendo conocimiento del robo. Existen decisiones que sostienen ampliamente esta teoría. Una persona es ciertamente culpable de este delito, si recibe una propiedad robada de un agente inocente del ladrón teniendo suficiente conocimiento de que había sido robada así como de la intención.

"En el caso de *Anderson* v. *State*, 38 Fla., 3, el estatuto disponía que cualquiera que comprara, recibiera, o ayudara a ocultar una propiedad robada, sabiendo que la misma había sido robada, sería castigada, y se resolvió que en una acusación formulada con arreglo al estatuto no es necesario mencionar el nombre del ladrón, ni el de la persona de quien se recibieron los efectos. 'El comprar y vender objetos robados,' dijo la corte, 'sabiendo que los mismos han sido robados,' es por tanto una ofensa substantiva. La ofensa que el estatuto castiga no es comprar, recibir, etc. * * * una propiedad

robada de manos del mismo ladrón, o de otra determinada persona, sino el comprar o recibir, etc., dicha propiedad de cualquier persona, sabiendo que ha sido robada.

"Hay una decisión en contra de esta teoría en el caso de *Foster* v. *State,* 106 Ind., 872, en el que la corte citó a Bishop y a Wharton, y dos antiguos casos de Indiana, *Kaufman* v. *State,* 49 Ind., 248, y *Owen* v. *State,* 52 Ind., 379. Sin embargo, ninguno de estos casos, es de aplicación, y aunque la decisión está apoyada por Bishop y Wharton, ninguno de estos tratadistas está apoyado por las autoridades que ellos citan. No hay razón alguna para declarar que la propiedad deja 'de ser propiedad robada,' a saber, propiedad que ha sido robada, tan pronto como se le entrega a una persona que tiene conocimiento de que ha sido robada.

"2 Clark & Marshall Law of Crime, pp. 878-879."

III. El conocimiento por parte del acusado de que los objetos habían sido hurtados es el punto principal sobre el cual descansa este caso. ¿Quedó establecido por la prueba que al comprarse o venderse los revólveres sabía el acusado que habían sido robados? El conocimiento de que los objetos eran robados es un estado de la mente, que según la naturaleza de la cuestión solamente puede probarse por las circunstancias o las admisiones del acusado. Existen varias circunstancias que rodean esta transacción tendentes a demostrar la condición mental del acusado cuando realizó el acto que se denuncia como ilegal. Examinémoslas en detalle.

(*a*) El acusado recibió un paquete que le enviaba un tal Aliceaga, conteniendo tres revólveres, y mandó siete dollars y medio al remitente. No hubo compra, si bien no se justificó que los efectos tuvieran un precio fijo en plaza, y siendo artículos de segundas manos, en cuyo negocio se ocupaba el acusado, no podían tener un valor determinado. Esta circunstancia debe por los menos considerarse como bastante sospechosa.

(*b*) Es raro que siendo el acusado un negociante en artículos de segundas manos y teniendo una tienda en donde efectuaba su negocio, enviara esos artículos a la Carolina para allí ser vendidos por un viajero que no parece haber

estado dedicado al negocio como vendedor ambulante, o que tuviera alguna facilidad especial para hacer esas ventas.

(*c*) Los revólveres estaban marcados con las letras P. I. Estas letras indican que la propiedad es de la Policía Insular, y no está sujeta a tráfico alguno, no pudiendo legalmente ser vendida. Aunque el acusado no supiera leer o escribir, esas señales son tan conocidas en esta Isla que difícilmente puede suponerse que él desconocía el significado de las mismas.

(*d*) La posesión de la propiedad prontamente después que había sido robada es una circunstancia de gran consideración que generalmente se considera como indicativa de culpabilidad, a menos que tal hecho quede satisfactoriamente explicado. En el presente caso no se hizo tal aclaración. Examinados en conjunto todos estos hechos inculpatorios, queda justificada de modo claro la acción de la Corte al declarar que al entrar el acusado en la posesión de estos revólveres, tenía conocimiento de que habían sido robados.

*People* v. *Clausen,* 120 Cal., 382.

*Weinberg* v. *People,* 208 Ill., 15.

*Huggins* v. *People,* 135 Ill., 244.

*State* v. *Feuerhaken,* 65 N. W. Rep., 301.

IV. Con respecto a la alegación del apelante de que de los hechos expresados en los autos no resulta que él comprara o recibiera los revólveres con intención maliciosa, basta decir que todas las circunstancias que rodean la cuestión deben apreciarse conjuntamente, y si se consideran así, ellas demuestran de modo claro la intención maliciosa.

La malicia ha sido definida en la ley criminal como "La ejecución de un acto contrario a la ley, intencionalmente y sin justa causa o excusa. Un propósito perverso y dañino que caracteriza la perpetración de un acto perjudicial sin excusa legal."

(4 Bar & Cr., 255; 9 Metc., 104) 2 Bouvier Law Dict., 295.

Otro lexicógrafo legal define la malicia como sigue:

"En su sentido legal esta palabra no solamente significa mala voluntad contra una persona, sino que también significa

la ejecución de un acto ilegal intencionalmente sin justa causa o excusa."

(4 Bar. & Cr., 255) Black Law Dict., 745. .

En la obra *Words and Phrases Judicially Defined,* tomo 5, página 4300, encontramos la siguiente definición:

"Malicia en la ley de asesinato, no significa mero despecho, mala voluntad, o desafección, según ordinariamente se interpreta esta palabra, sino que indica aquel estado de la mente que impulsa a una persona a quitar la vida a un semejante sin que medie justa causa o provocación, y significa un estado de ánimo que revela un corazón pervertido e inclinado fatalmente hacia el daño."

Entre las muchas autoridades, hacemos referencia a las siguientes:

*State* v. *Dickson,* 78 Mo., 438, 441.

*Martínez* v. *State,* 30 Tex. App., 129, 28 Am. St. Rep., 895; 16 S. W., 767, 768.

*Territory* v. *Hart,* 7 Mont., 489; 17 Pac., 718, 722.

*United States* v. *Boyd,* 45 Fed. Rep., 851, 857.

*United States* v. *Lewis,* 111 Fed. Rep., 630, 632.

Nuestro estatuto contiene la siguiente definición:

"Cuarto. Las palabras 'malicia' y 'maliciosamente,' denotan la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa, la esciente infracción de la ley, en perjuicio de otro." Código Penal, artículo 559, pág. 146.

Malicia en su sentido legal significa la comisión intencional de un acto dañoso hacia otra persona, sin que exista justificación legal o excusa. (30 Tex. Ct. App. Rep., 138; *Martínez* v. *State.*)

Aplicando la ley según ha sido expresada a los hechos tal como aparecen en los autos, no puede haber duda alguna de la intención maliciosa con que se cometió el delito.

Después de un examen detenido de todas las pruebas contenidas en los autos, no existe duda alguna en la mente de la corte de que existieron y se probaron todos los elementos del

delito imputado, debiendo confirmarse la sentencia condenatoria.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.