EL PUEBLO DE PUERTO RICO, apelado, *v.* HÉCTOR RODRÍGUEZ JIMÉNEZ y MARTÍN JIMÉNEZ MEDINA, acusados y apelantes.

*Números:* CR-88-70 *Resueltos:* 21 de febrero de 1991
CR-88-63

*Enrique Rivera Mendoza, Carmen A. Rodríguez Maldonado* y *Rolando Hernández Rodríguez*, de la *Sociedad para Asistencia Legal*, abogados de los apelantes; *Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General Auxiliar, Juan R. Deliz Román* y *Blanca A. Díaz Segarra, Procuradores Generales Auxiliares*, abogados de El Pueblo.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Este caso nos permite resolver si una persona que se apropia de bienes que no le pertenecen y luego dispone de ellos incurre en una violación del delito tipificado en el Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274.

## I

Luego de un juicio por tribunal de derecho, el Tribunal Superior, Sala de Guayama, encontró a los acusados apelantes Héctor Rodríguez Jiménez y Martín Jiménez Medina culpables de violación al Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274. El 13 de junio de 1988 se dictó sentencia contra el acusado apelante Rodríguez Jiménez, imponiéndole la pena de tres (3) años de reclusión bajo el régimen de sentencia suspendida. El acusado apelante Jiménez Medina fue sentenciado el 27 de junio de 1988 a una pena de tres (3) años en probatoria. Se le impuso como condición especial que resarciera la cantidad de trescientos cincuenta dólares ($350) a la parte perjudicada. Para esto se le concedió un plan de pago de veinticinco dólares ($25) mensuales.

No conformes apelaron ante nos. Consolidamos los recursos.

Los acusados apelantes plantean la comisión de tres (3) errores que pueden resumirse así: que erró el tribunal de instancia al encontrar a los acusados culpables (1) cuando la prueba hace el veredicto insostenible en derecho; (2) cuando la prueba no establece la culpabilidad más allá de duda razonable, y (3) cuando el Ministerio Público no probó los elementos del delito imputado.

## II

El Ministerio Público presentó como testigos al Sr. José Manuel Morales Cádiz, al Sr. Carlos Boyer y al agente Dones. La defensa no presentó prueba.

Por considerarlo un resumen correcto y adecuado de los hechos, a continuación transcribimos el que hizo el Procurador General en su alegato.

La prueba estableció que el Sr. José Manuel Morales Cádiz era dueño de un caballo semi-pony que originalmente había comprado para su hijo. Al hijo del Sr. Morales crecer casi no usaba el caballito. Además, su hijo y toda su familia estaban en Estados Unidos y no tenía quien cuidara del mismo. Por esta razón, el Sr. Morales le prestó a un vecino suyo, un tal Colomba, el caballito para que lo cuidara y usara. Colomba confrontó problemas para cuidar el caballo y lo entregó al hermano del acusado Martín Jiménez.

El hermano del acusado fue a hablar con el Sr. Morales para informarle que él tenía el caballo para cuidarlo y para que su hijito lo corriera. El Sr. Morales consintió a ello. Posteriormente el hermano del acusado se trasladó con su hijo a los Estados Unidos. Este dejó encargado a su padre del cuido del caballo en lo que él regresaba. El padre del acusado informó al Sr. Morales que él se encargaría del caballo en lo que su hijo regresaba de Estados Unidos. El Sr. Morales nuevamente consintió a ello. (1)

La familia Jiménez continuó en posesión del pony por un tiempo. Según el testigo Sr. Carlos Boyer, un día, mientras los acusados cuidaban el caballo frente a la casa de éstos, él pasó por allí e inquirió sobre si ellos lo vendían. Los acusados contestaron que sí, que lo vendían por $250.00. El Sr. Boyer aceptó la oferta y les dijo que una semana después pasaría a recogerlo. Pasada esa semana el Sr. Boyer pasó a buscar el caballo pero debido a que los acusados no estaban no se pudo consumar el negocio. Pasada una semana adicional el Sr. Boyer le entregó al acusado Héctor Rodríguez los $250.00 en presencia del también acusado Martín Jiménez y éstos le entregaron el caballito. (2)

Cuando el Sr. Morales se enteró de la venta del caballo, averiguó que el Sr. Boyer lo había comprado y fue a requerirle su entrega. El Sr. Boyer no entregó el caballo, sino hasta que se lo ordenó un juez. Informe Procurador General, págs. 2–3.

## III

■ Este caso nos permite interpretar el Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274, que dispone así:

---

(1) El señor Morales no le daba dinero a la familia Jiménez para que alimentaran al caballo ni para cubrir los demás costos del cuidado del mismo.

(2) A la fecha de los hechos era el padre del coacusado Martín Jiménez Medina quien en su finca cuidaba el pony. Allí vivían éste con su esposa, la madre del coacusado y los dos acusados Jiménez Medina y Rodríguez Jiménez.

*Recibo y transportación de 'bienes apropiados ilegalmente*

Toda persona que compre, reciba, retenga, transporte, cargue o disponga de algún bien mueble, a sabiendas de que fue obtenido mediante apropiación ilegal, robo, extorsión, o cualquier otra forma ilícita, será sancionado [sic] con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares, o ambas penas a discreción del tribunal, si el valor del bien apropiado ilegalmente no llegare a doscientos (200) dólares. Si llegare o excediere este valor, será sancionada con pena de reclusión por un término fijo de tres (3) años. De mediar agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dos (2) años. El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida o ambas penas.

 Este artículo proviene de los Arts. 438 y 439 del derogado Código Penal de 1937[3] y es más amplio que su antecesor.[4] Desde la aprobación del nuevo Código Penal de 1974, sólo nos hemos expresado sobre el Art. 168 en una ocasión. *Pueblo v. Álvarez*, 105 D.P.R. 475 (1976). Allí, al discutir el elemento de que el acusado, a sabiendas de que el bien mueble (prendas) era propiedad hurtada, lo estaba poseyendo, reiteramos la norma expuesta en *Pueblo v. Batista Maldonado*, 100 D.P.R. 936, 938–939 (1972), de que la mera posesión de los objetos hurtados no

---

[3] Con respecto al Art. 439 del Código Penal de 1937, en los comentarios que se incluyeron en la edición de 1975 del Código Penal, 33 L.P.R.A. ant. sec. 1694, se dijo lo siguiente:

"Las disposiciones del anterior Código incluida [sic] en su artículo 439, sobre introducción en Puerto Rico de bienes hurtados, estaría comprendida en el inciso (a) del artículo 2 [del Código Penal de 1974] que trata sobre la Aplicación Territorial de la Ley Penal."

[4] El Art. 438 del Código Penal de 1937 (33 L.P.R.A. ant. sec. 1693) disponía así:

*"Recibo de bienes robados*

"Toda persona que por lucrarse, o para impedir que el dueño vuelva a poseerla, comprare o recibiere alguna cosa mueble, sabiendo que fue hurtada, incurrirá en pena de presidio por un término máximo de cinco años, cuando el valor de la cosa fuere cincuenta (50) dólares o más; o de cárcel por un término máximo de un año, cuando el valor de dicha cosa fuere menos de cincuenta (50) dólares y constituirá indicio vehemente de haber sido hurtada dicha cosa si fuere alguna alhaja, artículo de plata o plateado, o de algún adorno personal, cuando se hubiere comprado o recibido de alguna persona menor de dieciocho años, a no ser que éste hubiere vendido la cosa en un establecimiento mercantil que tuviere dicho menor o su principal."

es por sí sola suficiente para sostener una convicción. Indicamos, sin embargo, que en ausencia de prueba directa de que el acusado sabía que la propiedad en su posesión fue obtenida mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilícita, "la posesión por el acusado de la propiedad recientemente hurtada unida a otras circunstancias justifica que se someta la cuestión al jurado . . .". *Pueblo v. Batista Maldonado*, supra, pág. 939.

Analicemos la jurisprudencia desarrollada al amparo del anterior Art. 438 del Código Penal, 33 L.P.R.A. ant. sec. 1693. En *El Pueblo v. Acevedo*, 18 D.P.R. 236, 238 (1912), expresamos que los elementos de este delito eran: (1) que los bienes habían sido robados por otra persona; (2) que el acusado los recibió o compró de otra persona; (3) que al comprarlos o recibirlos sabía que habían sido robados, y (4) que los compró o recibió con un fin malicioso. De otra parte, en *Pueblo v. Vélez Matos*, 90 D.P.R. 9, 13 (1964), indicamos que infringía el Art. 438, *supra*, "tanto la persona que compra como la que recibe en prenda alguna cosa mueble sabiendo que fue hurtada". Mediante *dicta* especificamos que no infringía dicho artículo la persona que se apropia de bienes que no le pertenecen y que luego dispone de dichos bienes.

En su análisis editorial al Código Penal de 1974, la Prof. Dora Nevares-Muñiz adopta igual posición al comentar el actual Art. 168, *supra*:

> Para que se configure el delito no importa de quién se obtiene el bien mueble. Lo importante es que el sujeto activo lo haga a sabiendas de que fue obtenido mediante un delito contra la propiedad o robo o de cualquier otra forma ilícita. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, San Juan, Rev. C. Abo. P.R., 1986, pág. 295.

Ahora bien, la hermenéutica en la esfera del derecho penal exige, como principio cardinal, que un estatuto penal sea interpretado restrictivamente en cuanto a lo que desfavorece al acusado y liberalmente en la medida en que lo favorece, ya que en

esta materia los estatutos están supeditados al principio de legalidad. Art. 8 del Código Penal de 1974 (33 L.P.R.A. sec. 3031); *Pueblo v. Arandes de Celis*, 120 D.P.R. 530 (1988); *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404 (1988); *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256 (1983); *Pueblo v. Uriel Álvarez*, 112 D.P.R. 312 (1982); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, Cap. 72, págs. 462–463.

■ Tomando en consideración estos principios de hermenéutica, los antecedentes y el historial del Art. 168 del Código Penal, *supra*, y la jurisprudencia interpretativa del Art. 438, *supra*, del cual procede, resolvemos que la persona que se apropia de bienes que no le pertenecen y luego dispone de ellos, no incurre en el delito tipificado en dicho Art. 168. La persona que comete este delito tiene que ser un tercero distinto del que obtuvo ilegalmente el bien del cual dispuso. De acuerdo con los hechos del caso de autos, no se configuró el delito imputado a los acusados apelantes.[5]

■ Con el consentimiento de su dueño, el caballo fue entregado a los familiares de los acusados para que éstos lo cuidaran mientras aquél estaba en Estados Unidos. Al momento de ocurrir la venta del equino, éste era cuidado por el padre de uno de los acusados en la finca donde éstos vivían. Por lo tanto, antes de producirse la venta y hasta ese momento, el caballo no era poseído ni fue obtenido ilegalmente por los acusados. "Cuando el acusado sólo tiene la custodia de la propiedad, y valiéndose de dicha custodia adquiere la posesión ilegalmente, la apropiación ilícita se convierte en un delito de [apropiación ilegal]", *Pueblo v. Landráu*, 78 D.P.R. 276, 278 (1955), no en una violación al Art. 168, *supra*.

Los errores señalados fueron cometidos.

---

(5) Esto no implica que los apelantes estuviesen inmunes a la imputación de algún otro delito. Su actuación muy bien pudo haber dado lugar a que fuesen acusados por otro delito tipificado en nuestro Código Penal, pero no por el delito previsto en su Art. 168 (33 L.P.R.A. sec. 4274).

Por todo lo antes expuesto, *se dictará sentencia que revoque las apeladas.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita.