EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ EDUARDO GARCÍA CIURO, acusado y apelante.

*Número:* CR-86-42          *Resuelto:* 30 de junio de 1993

*Rubén Guzmán Torres, Carmen Ana Rodríguez Maldonado* y *Enrique Rivera Mendoza,* de la *Sociedad para Asistencia Legal,* abogados del apelante; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, Josefa A. Román García* y *Blanca A. Díaz Segarra, Procuradoras Generales Auxiliares,* abogados de El Pueblo.

## SENTENCIA

El apelante, José Eduardo García Ciuro, resultó convicto por infracción al Art. 168 del Código Penal (*recibo y transportación de bienes apropiados ilegalmente*), 33 L.P.R.A. sec. 4273.([1]) En síntesis, el apelante ha hecho cier-

---

([1]) La acusación contra el apelante se expone de la forma siguiente:

"Allá en o para el día 19 de julio de 1985 y en Guaynabo, P.R., que forma parte del Tribunal Superior de P.R., Sala de Bayamón, P.R. el referido acusado JOSE E. GARCIA CIURO, voluntaria, maliciosa y criminalmente, vendió, recibió, compró, retuvo y/o dispuso de un bien mueble consistente en un auto Toyota Corolla, modelo 1984, tablilla número 96J886, valorado en $8,000.00, perteneciente al SR. LUIS A. MELENDEZ RODRIGUEZ, a sabiendas de que el mismo había sido obtenido de forma ilícita, o sea, mediante el delito de apropiación ilegal."

tos señalamientos sobre la apreciación de la prueba por el tribunal a quo y la admisibilidad de cierta prueba de referencia. Impugna, además, como excesiva la pena impuesta.

## I

Según se desprende de la exposición narrativa de la prueba, el Ministerio Público presentó cinco (5) testigos de cargo. La defensa por su parte no presentó evidencia.

El primer testigo de cargo fue el menor Darío Soto Figueroa. Este declaró no conocer al acusado, ni haberlo visto anteriormente. Alegó haberle mentido al Juez del Tribunal de Menores, Hon. Ramón A. Buitrago Iglesias, sobre lo ocurrido el día de los hechos, 19 de julio de 1985. Luego de esto, el menor se negó a seguir declarando. La defensa no contrainterrogó a este testigo.

En segundo lugar testificó el Sr. Luis A. Meléndez Rodríguez. Éste declaró que el 17 de julio de 1985 le hurtaron su vehículo *Toyota Corolla 1984* del frente de su residencia. Volvió a ver su auto el día de los hechos en el Cuartel de Bayamón; éste se encontraba semidesmantelado. *Desconoce a las personas que se apropiaron de su auto.* La defensa no lo contrainterrogó.

En tercer lugar declaró el Sr. Rafael Tellado González. Atestó que el 19 de julio de 1985, a eso de la media noche, conducía por la carretera de Río Piedras a Caguas rumbo a su residencia del barrio Guaraguao de Guaynabo. Regresaba de un juego de baloncesto. Dijo que iba sólo en su camioneta Ford y delante de él viajaban su esposa y sus cuatro (4) hijos en una *station wagon* Fairmont, conducida por la primera. Expresó que ambos iban por el carril izquierdo y, de momento, "sintió un celaje" y vio que un auto impactó el auto de su esposa por el guardafango derecho. Expresó que al ver que el auto no se detuvo, lo siguió y lo forzó a detenerse fuera de la carretera. *El que guiaba*

*quedó pillado y el testigo vio dos (2) siluetas huyendo*. Miró por su espejo retrovisor y vio fuego en la guagua de su familia, por lo que dio marcha atrás, pero ya era tarde. La guagua estaba incendiada. Expresó que el auto que impactó al vehículo conducido por su esposa era un *Toyota blanco*, cuyos ocupantes abandonaron el auto.(²) No hubo contrainterrogatorio de este testigo por parte de la defensa.

Luego declaró el Sr. Ángel L. Torres Bernard. Éste alegó conocer al menor Darío Soto Figueroa. Relató que Soto Figueroa le narró como él, en unión a un tal Carmelo y al apelante, había sufrido un accidente donde habían fallecido cinco (5) personas. Nada más le dijo Soto Figueroa sobre el accidente.(³) Manifestó, además, que vio a los tres (3), incluyendo al apelante, en la plaza de Guaynabo y que todos habían llegado a pie a dicho lugar.

A preguntas de la defensa, el señor Torres Bernard declaró que mientras estuvo en la plaza *no vio ningún vehículo del cual el apelante, junto a los otros, hubiese salido o entrado*. En ausencia de prueba de otras circunstancias tenemos que concluir que este testimonio, en cuanto al apelante concierne, constituye prueba de referencia. Véanse: Regla 60(c) y Regla 61 de Evidencia de 1979 (32 L.P.R.A. Ap. IV).

Por último, testificó el agente Pedro Albino. Este declaró, en síntesis, que como parte de la investigación sobre los hechos recibió información acerca del apelante a través de Darío Soto. Señaló que al encontrarse con el apelante *"le leyó las advertencias y después se las dijo verbalmente*. Que al momento de hacerle las advertencias estaba presente el entonces Sargento, Francisco Morales. Que luego de las advertencias el apelante le dijo *'que él no había sido el que*

---

(²) Cabe señalar, además, que a consecuencia de dicho accidente, tanto la esposa como los cuatro (4) hijos del señor Tellado González resultaron muertos.

(³) Tampoco declaró sobre hecho alguno que conecte al apelante con el delito imputado.

*ocasionó el accidente descrito anteriormente, pero que sí él viajaba en el auto en compañía de los otros ocupantes'.* También le dijo *'que habian encontrado el carro cerca de su casa' ".* (Énfasis suplido.) E.N.P., pág. 3.

Durante el contrainterrogatorio, la defensa se limitó a tratar de impugnar por omisión lo declarado por el agente, por el hecho de que éste no incluyera en su informe de arresto las manifestaciones que le hiciera el apelante.[4]

El 16 de enero de 1986 el Tribunal Superior, Sala de Bayamón (Hon. Carmen Celinda Ríos, Juez),[5] luego de escuchar la prueba antes detallada y declarar sin lugar una solicitud de absolución perentoria, presentada por la defensa, declaró al apelante culpable y convicto por el delito de infracción al Art. 168 del Código Penal, *supra.* El tribunal a quo le impuso cinco (5) años de reclusión.[6]

De dicha sentencia el apelante acude ante este Tribunal para señalar la comisión de tres (3) errores por parte del tribunal de instancia.[7] Ambas partes han presentado sus respectivos alegatos. Resolvemos.

## II

En su primer señalamiento el apelante impugna la admisibilidad de la alegada admisión que éste le hiciera al

---

[4] En el redirecto el agente Albino justificó tal omisión señalando que no puso las manifestaciones del apelante en su informe y sí las de Darío Soto, debido a que éste último era el testigo para someter el caso. Prefirió consultar al Fiscal sobre lo que se podía hacer con estas manifestaciones.

[5] El acusado renunció a su derecho de juicio por jurado.

[6] Al apelante se le denegaron los beneficios de una sentencia suspendida luego del tribunal examinar a quo el informe presentencia.

[7] "1. Erró el Honorable Tribunal de Instancia al admitir en evidencia prueba de referencia y al admitir en evidencia una supuesta admisión que no fue corroborada por la prueba desfilada.

"2. Erró el Honorable Tribunal de Instancia al sentenciar al acusado por la infracción al Artículo 168 del Código Penal a cinco (5) años de reclusión, sin que mediara moción ni vista sobre agravantes.

"3. Erró el Honorable Tribunal de Instancia al declarar culpable al acusado con una prueba que no estableció su culpabilidad más allá de toda duda razonable." Alegato del apelante, págs. 5–6.

agente Pedro Albino. En síntesis, el apelante arguye que el Estado no cumplió con su deber de probar la voluntariedad de la supuesta admisión hecha por el acusado al agente Albino.

Nuestro ordenamiento jurídico reconoce que las declaraciones inculpatorias que hace un sospechoso en quien se ha centralizado una investigación criminal o imputado un delito serán admisibles sólo cuando el Ministerio Público demuestre que el sujeto renunció voluntaria, consciente e inteligentemente a su derecho a no incriminarse. *Pueblo en interés menor J.A.B.C.*, 123 D.P.R. 551 (1989). Tal renuncia es consciente e inteligente cuando se le informa apropiada y eficazmente al sospechoso sobre su protección constitucional contra la autoincriminación, "incluyendo *la advertencia crucial* de que cualquier manifestación que haga al respecto podrá ser usada en su contra en un proceso criminal". (Énfasis en el original.) *Pueblo en interés menor J.A.B.C.*, supra, pág. 562. Véanse, también: *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991); *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765, 776 (1965). Al Estado le corresponde la carga de demostrar que se hicieron las advertencias de rigor y que la renuncia del sospechoso fue voluntaria e inteligente. *Pueblo v. Pellot Pérez*, 121 D.P.R. 791 (1988).

Para que el Ministerio Público cumpla con el deber de probar que la renuncia del derecho contra la autoincriminación fue voluntaria, consciente e inteligente, hemos exigido que se "desfile *prueba detallada sobre las advertencias específicas* que se le hicieron al sospechoso y *sobre las condiciones imperantes en el momento* en que éste hizo la admisión o confesión ...". (Énfasis en el original.) *Pueblo v. Ruiz Bosch*, supra, pág. 776. Es decir, "antes de que el Ministerio Fiscal presente prueba sobre la admisión o confesión extrajudicial realizada por un imputado de delito, éste viene en *la obligación* de desfilar prueba detallada y específica sobre los aspectos a los que hemos hecho referencia

anteriormente". (Énfasis en el original.) Íd., pág. 777.[8] Según dijéramos en *Pueblo v. Ruiz Bosch*, supra, esa es la única forma en que un tribunal puede determinar, a base del criterio de la totalidad de las circunstancias, si la renuncia " 'fue voluntaria, consciente e inteligente' ". Íd., pág. 776.

### III

En este caso no surge del testimonio del agente Albino ni de la prueba desfilada por el Estado, según se recogen en la exposción narrativa de la prueba, cuáles fueron las advertencias *específicas* que se le hicieron al apelante García Ciuro antes de que éste prestara la alegada declaración incriminatoria. El Ministerio Fiscal, mediante el testimonio del agente Albino, se limitó a probar *únicamente* y de forma *general* que se le habían leído las advertencias al apelante.[9] No se probó, conforme manda la doctrina, la *voluntariedad* de las admisiones hechas por el acusado. El Ministerio Público no descargó con el peso de la prueba que le impusimos en *Pueblo v. Ruiz Bosch*, supra. Las admisiones hechas por el apelante García Ciuro ante el agente Albino eran inadmisibles, por lo que erró el tribunal al permitirlo.

Por otro lado, debemos evaluar si dicha actuación judicial errónea acarrea la revocación de la sentencia apelada. Para ello resulta pertinente examinar primero la Regla 4 de Evidencia que dispone lo siguiente:

No se dejará sin efecto una determinación de admisión de

---

[8] El Gobierno debe demostrar que se hicieron correctamente las advertencias de rigor, que el sospechoso las entendió, y que sin coacción alguna por parte de las autoridades optó por declarar. E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, pág. 98.

[9] En *Pueblo en interés menor J.A.B.C.*, 123 D.P.R. 551, 562 esc. 6 (1989), advertimos que "[l]os funcionarios del Estado no cumplen con su obligación de informarle al sospechoso o acusado de su derecho contra la autoincriminación en una *'forma eficaz'*, haciendo dichas advertencias en *forma mecánica* con el único propósito de cumplir con el requisito de las advertencias". (Énfasis en el original.)

evidencia ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:

(1)La evidencia fue erróneamente admitida *a pesar de la oportuna y correcta objeción* de la parte perjudicada por la admisión, y

(2)el tribunal que considera *el efecto* de la admisión errónea entiende que ésta *fue factor decisivo o sustancial* en la sentencia o decisión cuya revocación se solicita. (Énfasis suplido.) 32 L.P.R.A. Ap. IV.

Hemos señalado que la transcrita Regla 4 de Evidencia, al exigir la "oportuna y correcta objeción", persigue "evitar que los tribunales de instancia incurran innecesariamente en errores relativos a la admisión de evidencia al contar éstos, *a tiempo*, con una correcta exposición del derecho aplicable conforme el mejor criterio y conocimiento de los abogados de las partes". (Énfasis suplido.) *Pueblo v. Ruiz Bosch*, supra, pág. 782. Luego que la parte afectada demuestre que interpuso "oportuna y correcta objeción" a la errónea admisión de evidencia, le compete entonces al tribunal apelativo evaluar si dicha admisión errónea constituye un " 'factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita' ". Íd.([10])

En este caso no se cumple con el primero de los dos (2) requisitos que establece la Regla 4 de Evidencia, *supra*, para que se pueda dejar sin efecto o se pueda revocar la sentencia apelada. Ni de la exposición narrativa de la prueba ni de los autos originales surge que la defensa haya interpuesto " 'oportuna y correcta objeción' ... a la evidencia sobre la admisión. Dicha situación hace inaplicable la citada Regla 4 [de Evidencia] a los hechos de este caso". (Énfasis suprimido.) *Pueblo v. Ruiz Bosch*, supra, pág. 783.

Sin embargo, en *Pueblo v. Ruiz Bosch*, supra, pág. 783, resolvimos que "[d]ebemos, *obligatoriamente*, considerar las disposiciones de la Regla 6 de Evidencia, ante, la cual

---

([10]) En *Pueblo v. Mangual Hernández*, 111 D.P.R. 136, 145 (1981), señalamos que el criterio para determinar si un error en la admisión de evidencia acarrea revocación "es determinar si, de no haberse cometido el error, probablemente el resultado hubiera sido distinto".

establece *en lo pertinente*, que nada de lo dispuesto en la antes transcrita Regla 4 'impedirá que un tribunal apelativo considere *errores crasos y perjudiciales* de admisión ... de evidencia, *a pesar de no haber mediado oportuna objeción*, cuando el no corregir dichos errores *resulte en un fracaso de la justicia'* ". (Énfasis en el original.)[11]

Ciertamente, la admisión equivocada de las declaraciones incriminatorias del apelante constituye un error *"craso y perjudicial"*. *Pueblo v. Ruiz Bosch*, supra, pág. 784 y págs. 783–784 esc. 6. Éste constituye lo que se conoce como un *error constitucional*.[12] La doctrina señala que ante errores de esta naturaleza "que puedan conllevar menoscabo de derechos constitucionalmente protegidos, como lo es el de auto-incriminación, *el peso de probar que la evidencia erróneamente admitida no fue perjudicial, recae sobre la parte que se benefició del error cometido"*. (Énfasis suplido.) *Pueblo v. Pellot Pérez*, supra, págs. 803–804. Véase *Chapman v. California*, 386 U.S. 18 (1967). Se ha sostenido, además, que cuando se trate de un "error constitucional", para que éste sea considerado como "no perjudicial" (*harmless*) por el tribunal apelativo, dicho foro tiene que estar convencido de ello *más allá de duda razonable*. *Chapman v. California*, supra, pág. 25.

El marco de referencia, a los fines de resolver cuándo un error "craso y perjudicial" en la admisión de evidencia amerita la revocación de una sentencia con el fin de evitar *"un fracaso de la justicia"*, es el siguiente:

----

[11] En *Pueblo v. Ruiz Bosch*, supra, págs. 783–784, señalamos el hecho de que "[n]o puede perderse de vista que la omisión en que incurre un abogado al no objetar una prueba que era inadmisible en evidencia puede ser el producto de variadas y diversas razones. Ello, entre otras, puede ser consecuencia de una estrategia forense legítima como también puede ser el resultado de una táctica forense 'ilegítima'. Dicha omisión, por otro lado, puede adicionalmente deberse tanto al desconocimiento del derecho aplicable por el abogado de la parte como también es factible que ello sea el resultado de un informado error de juicio". (Escolios omitidos.)

[12] El "error constitucional" se refiere a errores en la admisión de prueba que afecten derechos constitucionales de la parte afectada. *Pueblo v. Pellot Pérez*, 121 D.P.R. 791 (1988).

si —independientemente de la existencia del error "craso y perjudicial" y la influencia que el mismo pudo tener sobre el juzgador de los hechos— *el resultdo del caso y la totalidad de las circunstancias en que se dio el mismo resultan ser compatibles con el ideal básico de justicia imperante en nuestra jurisdicción; esto es, la consecución de un "resultado" (sentencia) correcto en derecho luego de la celebración de un proceso justo e imparcial en que se observaron, cuando menos, las garantías mínimas del debido procedimiento de ley.* (Énfasis en el original.) *Pueblo v. Ruiz Bosch*, supra, pág. 787.

Luego de analizar cuidadosamente la exposición narrativa de la prueba desfilada a nivel de instancia y los argumentos esbozados por el Estado ante este Tribunal, *no estamos convencidos "más allá de duda razonable"*[13] de que la sentencia apelada deba sostenerse. *En este caso el Ministerio Fiscal no desfiló ninguna prueba independiente de las admisiones del apelante que conectaran a éste con la comisión del delito imputado.*[14]

En virtud de lo antes expuesto, resolvemos que el Ministerio Público no descargó adecuadamente su obligación de demostrar *más allá de duda razonable* que la admisión errónea de las declaraciones del apelante constituyó un error "no perjudicial".[15] En consecuencia, procede que revoquemos la sentencia apelada y declaremos al apelante no culpable del delito que le fue imputado.

Lo antes resuelto hace innecesaria la discusión de los otros señalamientos de error presentados por el apelante.

---

[13] *Chapman v. California*, 386 U.S. 18 (1967).

[14] El delito de "recibo de bienes apropiados ilegalmente" requiere para su configuración que se prueben los elementos siguientes: (1) que los bienes habían sido robados por otra persona; (2) que el acusado los recibió o compró de otra persona; (3) que al comprarlos o recibirlos sabía que habían sido robados, y (4) que los compró o recibió con un fin malicioso. *Pueblo v. Rodríguez Jiménez*, 128 D.P.R. 114 (1991); *El Pueblo v. Acevedo*, 18 D.P.R. 236, 238 (1912).

En caso de que hubieran podido ser presentadas válidamente en evidencia, tenemos serias dudas de que las referidas admisiones, por sí solas, sean suficientes para establecer todos los elementos del delito imputado al apelante.

[15] El error "no perjudicial" es aquel que no contribuyó al veredicto obtenido. *Chapman v. California*, supra.

## IV

Por los fundamentos antes expuestos, *se revoca la sentencia apelada y se dicta otra declarando no culpable al apelante.*

Lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García disintió mediante opinión escrita, a la cual se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

## I

En *Pueblo v. Rodríguez Martínez*, 100 D.P.R. 805, 812 (1979), reconocimos que "[l]os que redactaron las constituciones de Puerto Rico y de Estados Unidos ciertamente tuvieron en mente prohibir que nadie fuese *obligado* a incriminarse mediante su propio testimonio, pero no se propusieron prohibir que un delincuente confesare libre, voluntariamente su crimen haciendo así las paces con su conciencia y con la sociedad. Esas dos constituciones tienen como uno de sus objetivos proteger la libertad de la conciencia de los seres humanos, no encadenarlos al mal. Dichas constituciones no exigen que una persona que ha llegado a ser delincuente está además obligada a ser mentiroso o perjuro toda su vida. Lo ético es decir la verdad aunque eso resulte amargo. La constitución no está reñida con la ética". (Énfasis en el original.)

La prueba no contradicha revela que el agente Pedro Albino "habló con el acusado [José E. García Ciuro] y le *leyó las advertencias y después se las dijo verbalmente. Que después de las advertencias* el acusado le dijo que él no había sido el que conducía el auto que *ocasionó el accidente,* pero *sí él los acompañaba.* También le dijo que *'habían encontrado el carro cerca de su casa'* [Guaynabo]". (Énfasis suplido.) E.N.P., pág. 3. No hay la más mínima prueba de que esas admisiones fueron producto de una coacción física o psicológica; tampoco que García Ciuro fuera inducido a incriminarse mediante engaño o promesa. *Cf. Pueblo v. Alcalá Fernández,* 109 D.P.R. 327 (1980). Incluso, no hay prueba de reclamo a la asistencia de abogado, ni antes ni después de hechas las advertencias. En estas circunstancias deberíamos respetar al tribunal sentenciador que determinó su voluntariedad. Las manifestaciones del acusado García Ciuro fueron hechas luego de haber sido advertido de sus derechos. Conociendo su alcance, voluntariamente renunció a no incriminarse. Ni la Constitución ni el Derecho exigen absurdos. Un sospechoso puede renunciar inteligente y conscientemente a los derechos fundamentales que le son reconocidos constitucionalmente, aún sin ser una persona instruida. *Pueblo v. Nieves Ramos,* 101 D.P.R. 531 (1973).

Por otro lado, el Tribunal Supremo federal ha resuelto que:

> ... las advertencias no tienen que seguir el lenguaje exacto de *Miranda* v. *Arizona,* 384 U.S. 436 (1966), a modo de hechizo talismático *(talismatic incantation). California* v. *Prysock,* 453 U.S. 355 (1981). La doctrina no requiere esa rigidez. Más aún, si a un acusado "se le ha dicho la sustancia de sus derechos constitucionales, no es fatal la omisión de palabras irrelevantes o sin sustancia independiente". (Traducción nuestra.) *United States* v. *Noti,* 731 F.2d 610, 614–615 (1984). Como recientemente dijo el más alto foro federal: "Hemos sostenido que una renuncia válida no requiere que un individuo sea informado de toda información 'provechosa' para hacer su decisión o toda información que pudiera ... afectar su decisión de confesar." (Tra-

ducción nuestra.) *Colorado* v. *Leroy*, 55 L.W. 4162, 4165 (1987). Y en *Moran* v. *Burbine*, 54 L.W. 4265, 4267 (1986): "Sin duda que esa información adicional pudo serle útil al acusado; inclusive pudo haber afectado su decisión de confesar. Pero nunca hemos leído la Constitución para requerir que la policía [o fiscal] suministre a un sospechoso un flujo de información que le ayude a calibrar su propio interés en decidir si habla o se mantiene en sus derechos." (Traducción nuestra.) *Pueblo v. López Rodríguez*, 118 D.P.R. 515, 536–537 (1987).

## II

No comprendemos cómo la mayoría caracteriza estas admisiones como prueba de referencia inadmisible. De acuerdo con la Regla 62(A) de Evidencia, 32 L.P.R.A. Ap. IV, como excepción, eran admisibles pues fueron hechas por la parte contra la que se ofrece (García Ciuro) en su capacidad individual. E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. VIII, págs. 294–295. Además, sus manifestaciones fueron corroboradas. *Pueblo v. Pérez Fernández*, 95 D.P.R. 919, 922 (1968). Nos explicamos.

Luis A. Meléndez Rodríguez, dueño del Toyota Corolla blanco, 1986, valorado en catorce mil dólares ($14,000), indicó que le fue hurtado el 17 de julio de 1985 del *frente de su casa* en *Guaynabo*. Lo volvió a ver el 19 de julio de 1985 en el Cuartel de Bayamón semi desmantelado. (Énfasis suplido.) E.N.P., pág. 1. Rafael Tellado González atestó que ese mismo día 19, un *Toyota blanco de (2) puertas*, chocó el carro de su esposa y causó el incendio y la muerte de ella y sus hijos. Vio *"la persona que conducía el auto"*; además, dos (2) siluetas que huían, *"pero el que guiaba quedó pillado"*. E.N.P., pág. 2.

Obviamente, el juzgador concluyó correctamente que el auto descrito por Tellado González como el causante del accidente fue el hurtado a Meléndez Rodríguez el 17 de julio. Ángel Torres Bernard declaró conocer a Darío Soto

Figueroa —testigo no disponible en el juicio (E.N.P., pág. 1)— y ser la persona a quien Soto Figueroa le hizo unas manifestaciones contra interés. Su declaración extrajudicial constituyó una excepción a la prueba de referencia. Regla 64(B)(3) de Evidencia, 32 L.P.R.A. Ap. IV; Chiesa, *op. cit.*, págs. 206–212. Soto Figueroa le *dijo que ellos habían tenido un accidente*, donde hubo *cinco (5) muertos* y habían estado Carmelo, José, Eduardo, y *el acusado* [García Ciuro]. E.N.P., págs. 2–3.

Evaluados integralmente esos testimonios, contundentemente corroboraron la admisión del acusado al agente Albino, quien por su parte dijo haber recibido información a través de Darío Soto.