EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>        v.<br><br>Javier Viruet Camacho<br><br>    Peticionario | Certiorari<br><br>2008 TSPR 60<br><br>173 DPR ____ |

Número del Caso: CC-2007-256

Fecha: 14 de abril de 2008

Tribunal de Apelaciones:

                Región Judicial de Arecibo, Panel VIII

Juez Ponente:
                Hon. Rafael L. Martínez Torres


Abogada de la Parte Peticionaria:

                Lcda. Wanda T. Castro Alemán

Oficina del Procurador General:

                Lcda. Daphne Cordero Guilloty
                Procuradora General Auxiliar

Materia: Supresión de Confesión


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                CC-2007-256     *CERTIORARI*

Javier Viruet Camacho

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 14 de abril de 2008

El 4 de abril de 2006, se presentó una denuncia contra Javier Viruet Camacho, por violaciones a la Ley de Armas y el delito de Asesinato en Primer Grado, a raíz de hechos ocurridos el 21 de marzo de 2006. Se le imputó que en tal fecha Viruet Camacho, "ilegal, voluntaria, premeditada y criminalmente dio muerte al ser humano Katherine Oliver Valentín, con la intención de causársela mediando premeditación", al apuñalarla en diferentes partes del cuerpo con un arma blanca.

En la vista preliminar celebrada el 9 de noviembre de 2006, el Tribunal de Primera Instancia, Sala de Superior de Arecibo, determinó

causa probable para acusar por los delitos imputados y pautó las fechas para el acto de lectura de acusación y el juicio.

Tras la presentación de los pliegos acusatorios correspondientes, Viruet Camacho presentó una moción solicitando supresión de una alegada confesión de los hechos. Alegó que su medio hermano, Raymond Viruet Delgado, quien se desempeña como oficial del Departamento de Corrección, y a quien hasta ese momento nunca había conocido, lo llamó por teléfono, quedando en encontrarse con él en Plaza Escorial en Carolina. Continuó indicando que luego de conocerlo, le pidió una identificación para saber si era agente de la policía y Viruet Delgado únicamente le mostró su licencia de conducir. Indicó que tras verificar su identidad, le abrazó y le expresó que había cometido un error, a lo cual Viruet Delgado le indicó que se había enterado por una noticia en el periódico y que interesaba entregarlo a las autoridades. Posteriormente, en el Cuartel de la Policía de Arecibo, Viruet Camacho alegadamente le relató a Viruet Delgado lo ocurrido en la fecha de los hechos. Viruet Camacho aduce que la confesión o admisiones obtenidas por Viruet Delgado son inadmisibles debido a que éste actuó como funcionario del orden público y no le hizo las advertencias de ley correspondientes, en contravención a su derecho contra la autoincriminación.

En oposición a la solicitud de supresión, el Estado expuso que Viruet Delgado no actuó como funcionario del orden público, por lo cual no tenía la obligación de hacer advertencia de ley alguna. De otra parte, señaló que un fiscal, personalmente, le hizo las advertencias de ley a Viruet Camacho cuando éste fue llevado al precinto de Arecibo y en tal ocasión, Viruet Camacho no solicitó la asistencia de un abogado sino indicó que quería hablar con su hermano. Así, sostuvo que la confesión obtenida fue voluntaria e inteligente.

En la vista de moción de supresión celebrada el 30 de enero de 2007, el ministerio público presentó el testimonio de Viruet Delgado. Tras evaluar la prueba desfilada, así como los argumentos de las partes, el tribunal de instancia declaró no ha lugar la moción de supresión de evidencia y señaló el caso para juicio.

Inconforme con tal determinación, Viruet Camacho presentó petición de *certiorari* y moción en auxilio de jurisdicción ante el Tribunal de Apelaciones, alegando que nunca renunció a su derecho contra la autoincriminación, por lo cual la confesión era inadmisible. En su recurso, adujo que la prueba presentada por el ministerio público fue insuficiente para establecer que se le impartieron las advertencias de ley o que renunció voluntaria, consciente e inteligentemente a su derecho a no auto incriminarse. El foro apelativo denegó la expedición del auto de *certiorari*. Al así hacerlo, dicho foro indicó que el

ministerio público descargó su responsabilidad de probar que la confesión obedeció a una renuncia voluntaria, consciente e inteligente, por lo cual, "la confesión del peticionario, fue conforme a derecho y [sic] no incidió el Tribunal de Primera Instancia al denegar la solicitud de supresión de la misma."

Inconforme aún, Viruet Camacho acudió ante este Tribunal mediante petición de *certiorari* y moción en auxilio de jurisdicción. En su petición, Viruet Camacho señala que incidió el foro apelativo al concluir que se le hicieron las advertencias de ley correspondientes, y al denegar la expedición del auto solicitado bajo el fundamento de que había renunciado a su derecho contra la autoincriminación de forma voluntaria, consciente e inteligente.

<u>Expedimos</u> el recurso. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

I

El inicio de la acción penal y los procedimientos que ello desencadena, necesariamente suscitan múltiples interrogantes en cuanto a los derechos que le asisten al sospechoso de delito en cada etapa. Durante la etapa investigativa, el interrogatorio de testigos, sospechosos y personas particulares que puedan ayudar a esclarecer lo ocurrido son de suma importancia. Sin embargo, existen límites constitucionales y jurisprudenciales que rigen las

funciones de los funcionarios del orden público en estos quehaceres. De particular relevancia a la presente controversia son las manifestaciones incriminatorias de un sospechoso de delito, mientras se investiga el caso, y su admisibilidad en el juicio en su contra. E.L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, 1era Ed., Colombia, Ed. Bosch, 1991, Vol. I, §2.1, pág. 49.

De entrada, el derecho a un debido proceso de ley prohíbe el uso de mecanismos de coacción física o mental hacia el sospechoso, con el propósito de obtener declaraciones incriminatorias. Así, para que sea admisible, toda declaración del interrogado debe ser libre y voluntaria. Chiesa, Op. Cit., §2.1, pág. 50; Véase Art. II, Sec. II, Const. E.L.A.; Emda. XIV, Const. EE.UU., L.P.R.A. Tomo 1.

Por otro lado, nuestra Constitución y la Constitución de los Estados Unidos garantizan el derecho de todo ciudadano contra la autoincriminación. Art. II, Sec. 11, Const. E.L.A.; Emda. V, Const. EE.UU., L.P.R.A. Tomo 1. Sobre el particular, nuestra Constitución establece, de forma expresa, que "[n]adie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra."

Ciertos derechos han sido subsumidos en el derecho contra la autoincriminación, a saber, el derecho de un sospechoso de la comisión de un delito a permanecer

callado, a no incriminarse, a que su silencio no pueda ser utilizado en su contra y a la asistencia de un abogado[1]. El derecho contra la autoincriminación ha sido caracterizado como uno de los "más trascendentales y fundamentales del derecho penal y procedimiento criminal que se practica en una democracia como la nuestra." Pueblo en interés menor J.A.B.C., 123 D.P.R. 551, 561-62 (1989); Pueblo v. Sustache Torres, res. 30 de junio de 2006, 2006 TSPR 112. Sobre el particular, el Profesor Ernesto L. Chiesa señala que "el derecho contra la autoincriminación es la protección más abarcadora que tienen los ciudadanos frente al interrogatorio de los funcionarios del gobierno." Chiesa, Op. Cit., §2.3, pág. 69.

Ahora bien, el derecho contra la auto incriminación no es absoluto ni opera automáticamente. Éste se activa en la etapa adversativa de una investigación, o sea, cuando el Estado enfoca la investigación en un sospechoso en particular. Cuando los funcionarios del orden público interrogan a un sospechoso, que se encuentra bajo

---

[1] Aun cuando el derecho a un debido proceso de ley y el derecho a la asistencia de un abogado también constan expresamente en nuestra Constitución, Véase Art. II, Sec. II, Const. E.L.A., en el contexto del interrogatorio de un sospechoso, ambos son analizados a la luz del privilegio contra la autoincriminación. De igual forma, el derecho a la asistencia de abogado conferido por la Enmienda Sexta de la Constitución de los Estados Unidos se refiere propiamente al inicio formal de la acción penal, o sea, después de la denuncia o acusación. Chiesa, Op. Cit., §2.3, pág. 83. En la etapa investigativa, rigen los preceptos de Miranda v. Arizona, 384 U.S. 436 (1966), y su progenie.

custodia, con el propósito de obtener declaraciones incriminatorias y sin hacerle las debidas advertencias de ley, cualquier declaración que haga el sospechoso será inadmisible. Dicho mecanismo pretende controlar la conducta policiaca, dirigida a la obtención de declaraciones incriminatorias sin antes informarle al sospechoso sobre sus derechos constitucionales. Véase Chiesa, Derecho Procesal Penal, Vol. I, §2.3, pág. 83-85; D. Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 8va Ed., San Juan, Instituto para el Desarrollo del Derecho, 2007, pág. 33-35; Pueblo v. Sustache Torres, ante.

Por el contrario, una admisión o confesión[2] que no es producto de un interrogatorio, o sea, cuando es ofrecida voluntariamente o de forma espontánea, es admisible en evidencia, por estar ausente el elemento de coacción. En ese contexto no se le puede requerir al Estado que se le hayan hecho las advertencias de ley antes de que la persona haga la declaración incriminatoria. Incluso, cuando la persona relata hechos delictivos, de forma espontánea y voluntaria, el funcionario del orden público

---

[2] La Profesora Dora Nevares-Muñiz distingue los conceptos de confesión y admisión de la siguiente manera: la admisión se refiere a aquellas manifestaciones sobre un hecho específico o sobre algún elemento del delito, mientras la confesión es la manifestación de que se cometió el delito, haciendo referencia a todos los elementos del delito y el acto delictivo. D. Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 8va Ed., San Juan, Instituto para el Desarrollo del Derecho, 2007, pág. 35.

ni siquiera tiene la obligación de interrumpirle para hacerle las advertencias de ley. Sólo tendría la obligación de hacerlo si luego procede a interrogarle. Nevares-Muñiz, Op. Cit. pág. 39.

Del mismo modo, es admisible una confesión voluntaria hecha por un sospechoso que se encuentra bajo custodia y quien ha sido advertido de los derechos constitucionales que le cobijan, siempre que sus declaraciones no sean producto de un interrogatorio y de conducta coercitiva de parte de funcionarios del orden público. Pueblo v. López Guzmán, 131 D.P.R. 867 (1992). Después de todo, las confesiones o admisiones voluntarias son una práctica deseable y favorecida tanto en nuestro ordenamiento como a nivel federal. Véase Chiesa, Derecho Procesal Penal, Vol. I, §2.3, pág. 83-85; D. Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 8va Ed., San Juan, Instituto para el Desarrollo del Derecho, 2007, pág. 33-35; Pueblo v. Sustache Torres, ante.

Aun cuando el derecho contra la autoincriminación puede ser renunciado válidamente, ya sea mediante una confesión o admisión espontánea o una renuncia expresa de sus derechos, es necesario demostrar ante el foro judicial que la renuncia fue voluntaria, consciente e inteligente. En reiteradas ocasiones, hemos señalado que, al evaluar si la renuncia es válida, debemos determinar, primeramente, si el abandono del derecho es voluntario en el sentido de que sea producto de una elección libre y deliberada. Es

decir, que no medie intimidación, coacción o violencia de parte de los funcionarios del Estado. En segundo término, es preciso que la renuncia sea consciente e inteligente, en tanto el sospechoso sea informado adecuadamente sobre el privilegio constitucional contra la autoincriminación y tenga pleno conocimiento del derecho abandonado así como de las consecuencias que acarrea dicha decisión. Es de particular importancia advertirle que cualquier manifestación podrá ser usada en su contra en un proceso criminal. Pueblo v. Rivera Nazario, 141 D.P.R. 865 (1996); Pueblo v. Medina Hernández, 158 D.P.R. 489 (2003); Pueblo en interés menor J.A.B.C., ante; Pueblo v. Ruiz Bosch, 127 D.P.R. 762 (1991).

De lo anterior se colige que, con el propósito de salvaguardar el derecho contra la autoincriminación, el Estado tiene la obligación de informarle, de forma clara, al imputado de delito las advertencias de ley correspondientes, a saber, que tiene el derecho a permanecer callado, que cualquier manifestación que haga podrá ser utilizada como evidencia en su contra, que tiene el derecho a consultar con un abogado de su selección antes de decidir si declara o no y contar con la asistencia de este durante el interrogatorio, y que de no tener dinero para pagar un abogado, el Estado tiene la obligación de proveérselo. Pueblo v. Rivera Nazario, ante; Pueblo v. Medina Hernández, ante; Pueblo en interés menor

J.A.B.C., ante; Pueblo v. López Guzmán, ante; Miranda v. Arizona, 384 U.S. 436 (1966).

No obstante, si bien el Estado tiene la obligación de hacerle las advertencias de ley correspondientes, según destacamos anteriormente, tal deber se activa únicamente cuando la investigación asume un enfoque acusatorio y adversativo, o sea, se enfoca en un sospechoso particular. Pueblo v. López Guzmán, ante; Chiesa, Vol. I, §2.3, pág. 82, 84.

En resumen, hemos establecido que una confesión o admisión es inadmisible, por ser violatoria del derecho contra la autoincriminación, cuando se satisfacen todos los siguientes cuatro requisitos: (1) que al momento de obtenerse la declaración impugnada ya la investigación se haya centralizado sobre la persona en cuestión y ésta sea considerada como sospechosa de la comisión de un delito; (2) que al momento de prestar la declaración en cuestión el sospechoso se encuentra bajo la custodia del Estado, (3) que la declaración haya sido producto de un interrogatorio realizado con el fin de obtener manifestaciones incriminatorias, y (4) que no se le haya advertido sobre los derechos constitucionales que nuestro ordenamiento le garantiza. Pueblo v. Medina Hernández, ante; Pueblo v. López Guzmán, ante; Pueblo en interés menor J.A.B.C., ante; Pueblo en interés del menor F.B.M., 112 D.P.R. 250 (1982).

Ahora bien, al evaluar si la renuncia al derecho contra la autoincriminación es válida, los tribunales debemos evaluar la totalidad de las circunstancias, entre éstos, las circunstancias personales y particulares del sospechoso, el periodo de tiempo que estuvo bajo custodia policiaca antes de prestar la confesión, la conducta policiaca mientras estuvo bajo custodia y si efectivamente estuvo o no asistido por un abogado al confesar. Pueblo v. Rivera Nazario, ante; Pueblo v. Medina Hernández, ante; Pueblo en el interés del menor J.A.B.C., ante. Pueblo en interés del menor F.B.M., ante; Nevares-Muñiz, Op. Cit. pág. 37.

Si bien hemos destacado que no existe un lenguaje talismánico para efectuar las advertencias de ley, éstas deben hacerse de forma eficaz con el propósito de que el acusado entienda lo que implica su renuncia. Así, pues, una lectura somera y automática de las advertencias de ley correspondientes podría resultar insuficiente si no se indaga sobre la voluntariedad de la confesión y se evalúan la totalidad de las circunstancias que rodearon la misma. Pueblo v. Rivera Nazario, ante; Pueblo v. Medina Hernández, ante; Pueblo en el interés del menor J.A.B.C., ante. Pueblo en interés del menor F.B.M., ante.

Es preciso destacar que el peso de la prueba recae sobre el Estado, a quien le corresponde probar que la confesión o admisión efectuada constituye una renuncia válida al derecho contra la autoincriminación y, por

tanto, es admisible en evidencia. Para que un tribunal pueda determinar, a base del criterio de la "totalidad de las circunstancias", si dicha renuncia fue voluntaria, consciente e inteligente, el Estado debe presentar prueba tendente a demostrar cuáles fueron las advertencias que se le hicieron al sospechoso y cuáles eran las circunstancias en las cuales éste prestó la confesión. Pueblo v. Medina Hernández, ante; Pueblo en interés del menor F.B.M., ante; Pueblo v. Pellot Pérez, 121 D.P.R. 791 (1988); Pueblo v. García Ciuro, 134 D.P.R. 13 (1993); Pueblo v. Ruiz Bosch, ante.

La admisibilidad de una confesión es determinada preliminarmente por el juez de instancia, quien tras escuchar la prueba que tengan a bien presentar las partes, y evaluarla en ausencia del jurado, determina si ésta es admisible. Si el juez concluye que la confesión es admisible, al acusado le asiste el derecho de presentar prueba, durante la continuación del proceso, tendente a demostrar que la confesión fue obtenida en violación a su derecho a no auto incriminarse o cualquier otra defensa que estime pertinente. Pueblo v. Rivera Nazario, ante; Véase Nevares-Muñiz, Op. Cit., pág. 38-39.

## II

En su recurso, Viruet Camacho argumenta que su hermano, Raymond Viruet Delgado, es un guardia de corrección y actuó como funcionario del orden público al

"arrestarle". Sostiene que éste no le hizo las advertencias de ley de rigor cuando lo "arrestó", y al así proceder, violentó su derecho contra la autoincriminación y el debido proceso de ley. Como consecuencia de ello, alega que toda declaración incriminatoria que él le hizo a Viruet Delgado es inadmisible; señala, además, que las posibles admisiones hechas previo a su "arresto", también deben excluirse porque al realizarlas desconocía que su hermano era funcionario del orden público. Aduce que éste tenía la obligación de identificarse como tal inmediatamente, indicarle su intención de entregarlo a las autoridades y advertirle sobre su derecho contra la autoincriminación.

De otra parte, Viruet Camacho alega que el ministerio público no ha demostrado cuales fueron las advertencias de ley específicas que le fueron impartidas por el fiscal a cargo del caso. A su juicio, el ministerio público no cumplió con el *quantum* de prueba requerido para probar que la renuncia al derecho contra la autoincriminación, y por tanto, la alegada confesión, fue obtenida válidamente. En particular, señala que el único testimonio ofrecido por el Estado fue el de Raymond Viruet, quien no estuvo presente cuando se le hicieron las alegadas advertencias de ley.

De entrada, es preciso determinar si Raymond Viruet Delgado actuó como un "funcionario del orden público" al "arrestar" a Viruet Camacho.

En su Artículo 8, la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, 4 L.P.R.A. §1126, según enmendada, creó un cuerpo de oficiales correccionales, responsables de custodiar a los confinados, conservar el orden y la disciplina en las instituciones correccionales, proteger a la persona y la propiedad, supervisar y ofrecer orientación social a los confinados, y desempeñar aquellas funciones asignadas por el Administrador de Corrección. Entre otros asuntos, se les confirió a los oficiales de corrección la facultad de "perseguir a confinados evadidos y liberados contra quienes pesa una orden de arresto emitida por la Junta de Libertad Bajo Palabra y prenderlos a cualquier hora, y en cualquier lugar", utilizando los mismos medios autorizados a los agentes del orden público para realizar un arresto.

En Pueblo v. Velazco Bracero, 128 D.P.R. 180 (1991), reconocimos que nuestra Asamblea Legislativa ha creado otros cuerpos policiales, además de la Policía de Puerto Rico, cuya función principal es proveer seguridad a sectores particulares que así lo requieren. Éstos, al amparo de las leyes especiales que habilitan sus cargos, ostentan la facultad de efectuar arrestos en el desempeño de sus funciones. Entre tales cuerpos policiales, designamos a los oficiales de corrección de la Administración de Corrección. Ahora bien, en dicha ocasión también destacamos que la autoridad para efectuar arrestos se confiere "bajo las circunstancias descritas" en cada

una de las leyes especiales en cuestión. Dicho de otra manera, la autoridad de cada funcionario del orden público para realizar arrestos se circunscribe a los mandatos de la ley particular que creó su cargo y mediante la cual se delimitan sus responsabilidades y facultades.

A base de la normativa antes expuesta, en esa ocasión resolvimos que un policía de la Administración de Veteranos es un funcionario del orden público facultado para realizar arrestos bajo nuestra Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 11, únicamente en relación a actividad delictiva llevada a cabo en los predios de la Administración de Veteranos. Sin embargo, éste debe procurar que una vez arreste al sujeto, se le notifique a las autoridades pertinentes para la tramitación del caso conforme a los preceptos constitucionales correspondientes. En dicho caso, el policía de la Administración de Veteranos se comunicó con la Policía de Puerto Rico, quien tramitó el caso en contra del sujeto.

Posteriormente, en Pueblo v. Rosario Igartúa, 129 D.P.R. 1055 (1992), concluimos que, distinto a lo resuelto en Velazco Bracero, un guardia de seguridad de la Autoridad de Tierras no es un funcionario del orden público para efectos de la Regla 11 de Procedimiento Criminal, porque la ley de dicho ente gubernamental no le confiere expresamente la autoridad para realizar arrestos. Como consecuencia, éste sólo puede realizar arrestos al

amparo de la Regla 12 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 12, la cual faculta a un ciudadano particular a arrestar a una persona por un delito cometido o que se hubiese intentado cometer en su presencia, o cuando se hubiere cometido un delito grave y la persona tiene motivos fundados para creer que la persona arrestada lo cometió. Véase E.L. Chiesa, _Derecho Procesal Penal de Puerto Rico y Estados Unidos_, 1era Ed., Colombia, Ed. Bosch, 1991, Vol. III, §21.4, pág. 33-34. Sobre el particular, el Profesor Chiesa señala que, conforme a la jurisprudencia interpretativa, resulta razonable inferir que es funcionario del orden público aquel que tiene facultad en ley para realizar arrestos. Chiesa, _Derecho Procesal Penal_, Vol. III, §21.4, pág. 34. Sin embargo, ello por sí solo no le extiende una facultad irrestricta para arrestar. Veamos.

Del Artículo 8 de la Ley Orgánica de la Administración de Corrección, antes reseñado, surge que los oficiales de corrección _únicamente tienen autoridad para realizar un arresto en el desempeño de sus funciones como tal_. Tomando en cuenta lo resuelto por este Tribunal en ocasiones anteriores, es forzoso concluir que si bien un oficial de corrección técnicamente tiene la autoridad para efectuar un arresto, _tal facultad se extiende a los periodos en los cuales descarga sus funciones como oficial de corrección y, además, se refiere únicamente al arresto de prófugos de la justicia_. Cualquier arresto efectuado

por un oficial de corrección, <u>fuera de su función como tal</u>, constituye un arresto por una persona particular cuya validez queda sujeta al cumplimiento con la Regla 12 de Procedimiento Criminal.

Del expediente ante nuestra consideración surge claramente que Viruet Camacho no era un confinado ni un prófugo de una institución penal. Ni siquiera existía una orden de arresto en su contra. Por lo cual, Raymond Viruet Delgado <u>carecía de autoridad para arrestarlo bajo la Regla 11 de Procedimiento Criminal, en carácter de funcionario del orden público</u>. En las circunstancias particulares de este caso, Viruet Delgado excedió las facultades que le concede el Artículo 8 de la Ley Orgánica de la Administración de Corrección.

En vista de que Viruet Delgado carecía de autoridad para arrestar a Viruet Camacho bajo la Regla 11 de Procedimiento Criminal, se suscita una interrogante en torno a la validez del arresto efectuado. Consecuentemente, nos corresponde determinar si la actuación de Raymond Viruet Delgado constituyó un arresto válido por una persona particular bajo la Regla 12 de Procedimiento Criminal. De así serlo, Raymond Viruet Delgado no tenía la obligación de hacerle las advertencias de ley, sino de entregarlo inmediatamente a las autoridades.

Del testimonio de Raymond Viruet Delgado surge que el 3 de abril de 2006, su suegro le mostró una noticia

publicada en un periódico de circulación general, en la cual se le imputaba a Viruet Camacho el asesinato de su compañera consensual. De este modo, Viruet Delgado advino en conocimiento de que su hermano había sido señalado como el posible autor de un delito grave. A raíz de dicho descubrimiento y tras varias gestiones, logró comunicarse con Viruet Camacho, a quien admitió nunca había conocido. Tras encontrarse con Viruet Camacho en un lugar público, e identificarse como su hermano, Viruet Camacho le pidió que le mostrara una identificación para cerciorarse que no era un policía. Una vez Viruet Delgado le mostró su licencia de conducir, Viruet Camacho le indicó que "había cometido un error". Después de escuchar dicha admisión, Viruet Delgado le dijo a Viruet Camacho que tenía que entregarse a las autoridades. Luego procedió a esposar a Viruet Camacho, lo trasladó al Cuartel de la Policía de Manatí y lo entregó a las autoridades.

En resumen, en ese momento no existía duda de que se había cometido un delito grave, a saber, el asesinato de Katherine Oliver Valentín. Viruet Delgado, además, tenía información por los periódicos de que las autoridades policíacas estaban tratando de localizar a su hermano en relación con dicho delito. Por último, su hermano le informó que había cometido "un error". Somos del criterio que en ese momento, Viruet Delgado tuvo los "motivos fundados" que requiere la Regla 12(b) de Procedimiento

Criminal para que se pueda llevar a cabo un arresto por un ciudadano particular.


                                III

¿Actuó correctamente Viruet Delgado? Entendemos que sí. La aseveración hecha por Viruet Camacho a los efectos de que había cometido "un error" fue una completamente voluntaria. Incluso, su expresión ni siquiera fue la respuesta a una pregunta formulada por Viruet Delgado. Ciertamente, no se trata de una admisión inadmisible porque cuando Viruet Camacho hizo tal declaración no se encontraba bajo custodia, ni estaba siendo interrogado por un funcionario del orden público. Adviértase que en vista de que Viruet Delgado no actuó como un funcionario del orden público, y siendo considerado como un ciudadano particular, este último no tenía la obligación de hacer las advertencias de ley. A esos efectos, la Profesora Nevares-Muñiz destaca que no es necesario hacer las advertencias de ley cuando las manifestaciones se hacen a una persona particular. Op. Cit., pág. 39.

Luego de su arresto, no existe prueba alguna tendente a demostrar que Viruet Camacho hizo alguna otra declaración incriminatoria desde el momento en que fue esposado hasta su llegada al Cuartel de la Policía de Manatí, al cual fue transportado por su hermano. Tampoco así mientras fue transportado en la patrulla desde el cuartel de Manatí al de Arecibo.

Una vez arribaron al Cuartel de la Policía de Arecibo, el Fiscal Ayende, en presencia del Agente Montalvo, le leyó las advertencias de ley a Viruet Camacho. Cuando Viruet Camacho llegó al cuartel, el Fiscal Ayende le preguntó a éste, en presencia de Viruet Delgado, si deseaba que se le hicieran las advertencias nuevamente, a lo cual Viruet Camacho indicó que las había entendido completamente. Viruet Camacho le expresó al Fiscal Ayende y al Agente Montalvo que no les iba a decir nada, que sólo hablaría con su hermano. Ante tal declaración, el fiscal y el agente se retiraron del cuarto, y Viruet Delgado le preguntó a Viruet Camacho qué había sucedido. Es ahí que Viruet Camacho le confiesa en detalle a su hermano lo sucedido. Viruet Delgado declaró que, en ese momento, Viruet Camacho indicó que le contaría al fiscal y al agente todo lo que le había relatado, pero cuando éstos entraron nuevamente al cuarto, en lugar de relatarle los hechos al fiscal y al agente, Viruet Camacho solicitó la asistencia de un abogado. No surge de la prueba que, posterior a ese momento, Viruet Camacho haya hecho alguna otra declaración incriminatoria o haya sido interrogado por el fiscal o algún agente.

Así, pues, surge que el Fiscal a cargo del caso le hizo las advertencias de ley a Viruet Camacho cuando llegó al cuartel y éste indicó haberlas entendido completamente.

El récord está huérfano de prueba que sustente la posición de Viruet Camacho. Por el contrario, el testimonio de un testigo que merezca crédito es prueba suficiente de cualquier hecho. Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV R.10. Del testimonio de Viruet Delgado surge que el fiscal le preguntó a Viruet Camacho, en presencia de él, si quería que le hicieran nuevamente las advertencias de ley, y éste destacó que no necesitaba que se las hicieran otra vez porque las había entendido bien. Así, rechazó el ofrecimiento del fiscal de impartírselas nuevamente en presencia de su hermano. De lo anterior, determinamos que Viruet Camacho fue advertido debidamente de sus derechos constitucionales.

Si bien es cierto que una vez el sospechoso solicita la asistencia de un abogado, cualquier interrogatorio debe suspenderse inmediatamente y toda manifestación posterior es inadmisible por ser violatoria del derecho contra la autoincriminación, tal no es la situación en el caso de autos. Si el sospechoso, a iniciativa propia, opta por hacer declaraciones sin asistencia de un abogado, a pesar de las advertencias al respecto, no cabe hablar de una violación a su derecho constitucional a no autoincriminarse. Chiesa, Op. Cit., §2.3, pág. 97. Ello en vista de que, conforme hemos reiterado, un sospechoso puede renunciar válidamente a tales protecciones constitucionales. Por lo cual, la exclusión de este tipo

de declaración descansa en una evaluación de los hechos particulares de cada caso.

En el caso de autos, Viruet Camacho conocía a cabalidad el derecho que le asistía a permanecer callado y a obtener la asistencia de un abogado, y aun así, optó por hacerle manifestaciones a su hermano en torno a los hechos por los cuales se le imputa el delito de asesinato. De modo que renunció de forma voluntaria, consciente e inteligente a su derecho contra la autoincriminación.

De otra parte, de la exposición narrativa de la prueba surge que el Fiscal Ayende no estuvo presente cuando Viruet admitió los hechos. Tampoco estuvo presente el Agente Montalvo. Ninguno de los dos se encontraba en el cuarto donde conversaron Viruet Camacho y Viruet Delgado; de lo cual, se puede concluir que éstos no interrogaron a Viruet Camacho con el propósito de que confesara o hiciera declaraciones incriminatorias. No hubo coacción de parte de los funcionarios públicos. De la prueba vertida ante el tribunal de instancia tampoco surge que en momento alguno éstos hayan instado a Raymond Viruet Delgado a extraerle información a Viruet Camacho, sino por el contrario, éste indicó de forma voluntaria que quería hablar con su hermano a solas. Cuando el fiscal y el agente volvieron a entrar al cuarto, fue que Viruet Camacho solicitó la asistencia de un abogado, esa vez en presencia de Raymond Viruet. Del expediente no surge que luego de ello, Viruet

Camacho haya hecho otras declaraciones incriminatorias, o se le haya sometido a un interrogatorio.

Tomando en cuenta lo anterior, concluimos que estamos ante una confesión o admisión voluntaria que no fue producto de conducta coercitiva de parte del Estado, ni fue obtenida durante un interrogatorio efectuado por funcionarios del orden público, elementos necesarios para tornar una declaración incriminatoria en evidencia inadmisible. Viruet Camacho hizo las declaraciones incriminatorias a una persona particular. Siendo ello así, dichas declaraciones son admisibles, aun cuando sean incriminatorias, porque no está presente el elemento de coacción necesario para su exclusión. Arizona v. Mauro, 481 U.S. 520 (1987); Oregon v. Elstad, 470 U.S. 298 (1985). Incluso, una confesión hecha libremente a un funcionario del orden público, tras las advertencias de ley, es admisible porque no existe el elemento de coacción necesario para que se configure una confesión y así excluirle bajo el derecho contra la autoincriminación. Pueblo v. Sustache Torres, ante.

Adviértase, además, que "no se activan las salvaguardas de Miranda cuando el sospechoso hace declaraciones incriminatorias a terceros que no son agentes, como a parientes, amigos o conocidos…". Chiesa, Derecho Procesal Penal, Vol. I, §2.3, pág. 88; Véase Pueblo v. López Guzmán, ante; Pueblo v. Rodríguez Martínez, 100 D.P.R. 805 (1972). Tal norma también ha sido

reconocida en el ámbito federal. Arizona v. Mauro, ante; U.S. v. Kimbrough, 477 F.3d 144 (4th Cir. 2007); U.S. v. Gaddy, 894 F.2d 1307 (11th Cir. 1990); U.S. v. Vázquez, 857 F.2d 857 (1st Cir. 1988). Las declaraciones incriminatorias efectuadas en ese contexto no están sujetas a exclusión bajo el derecho contra la autoincriminación. Así, cualquier manifestación hecha voluntariamente por un sospechoso a personas particulares, incluyendo familiares, son admisibles en evidencia. Nevares-Muñiz, Op. Cit., pág. 39.[3]

IV

Es bien sabido que el foro primario es el que tiene la oportunidad de ver y observar a los testigos, y su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas y vacilaciones, e ir formando gradualmente en su conciencia la convicción de si dicen o no la verdad. López Delgado v. Dr. Cañizares, res. 5 de octubre de 2004, 2004 TSPR 160; Argüello v. Argüello, 155 D.P.R. 62 (2001). Consecuentemente, los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realizan los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Rodríguez v.

---

[3] Nótese que ello no implica que el Estado puede usar a una persona particular para extraer una declaración incriminatoria y así evadir las protecciones constitucionales que cobijan al sospechoso. Nevares-Muñiz, Op. Cit., pág. 39.

Nationwide Insurance, 156 D.P.R. 614 (2002); Argüello v. Argüello, ante.

En el caso ante nuestra consideración, el tribunal de instancia quedó convencido, a base del testimonio vertido por Viruet Delgado, que se fectuaron las advertencias de ley y que Viruet Camacho renunció de forma voluntaria, consciente e inteligente a su derecho contra la autoincriminación. Dicho proceder no fue arbitrario o caprichoso. Indudablemente, Viruet Camacho sabía que era sospechoso del delito de asesinato. También sabía que cualquier declaración que hiciera podría usarse en su contra. Aun así, optó por contarle lo sucedido a su hermano. Tampoco albergamos duda de que conocía su derecho a la asistencia de un abogado, ya que finalmente ejerció dicho derecho, a pesar de que lo hizo después de haberle hecho a su hermano las declaraciones cuya exclusión denegó el tribunal de instancia y hoy reafirmamos.

Por lo cual, no erró el foro primario al declarar sin lugar la moción de supresión de confesión.


V

En mérito de lo antes expuesto, procede dictar Sentencia confirmatoria de la determinación del tribunal de primera instancia declarando no ha lugar la moción de supresión de evidencia, devolviéndose el caso ante dicho

foro para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Se dictará Sentencia de conformidad.



FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       vs.                    CC-2007-256     *CERTIORARI*

Javier Viruet Camacho

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 14 de abril de 2008

Por los fundamentos expuestos en la Opinión que antecede, la cual forma parte íntegra de la presente, se dicta Sentencia confirmatoria de la determinación del Tribunal de Primera Instancia, Sala Superior de Arecibo, declarando no ha lugar la moción de supresión de evidencia y se devuelve el caso a dicho foro para la continuación de los procedimientos de conformidad con lo aquí expuesto y resuelto.

Así lo pronunció, manda el Tribunal y certifica al Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta concurrió en el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo