El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
El 4 de abril de 2006 se presentó una denuncia contra Javier Viruet Camacho por violaciones a la Ley de Armas de Puerto Rico y el delito de asesinato en primer grado, a raíz de hechos ocurridos el 21 de marzo de 2006. Se le imputó que en tal fecha Viruet Camacho, “ilegal, volunta-ria, premeditada y criminalmente dio muerte al ser hu-mano Katherine Oliver Valentín, con [la] intención de cau-sársela mediando premeditación”, al apuñalarla en diferentes partes del cuerpo con un arma blanca. Apéndice, pág. 20.
En la vista preliminar celebrada el 9 de noviembre de 2006, el Tribunal de Primera Instancia, Sala de Superior de Arecibo, determinó causa probable para acusar por los delitos imputados y pautó las fechas para el acto de lectura de acusación y el juicio.
*568 Tras la presentación de los pliegos acusatorios corres-pondientes, Viruet Camacho presentó una moción de su-presión de una alegada confesión de los hechos. Alegó que su medio hermano, Raymond Viruet Delgado, quien se des-empeña como oficial del Departamento de Corrección, y a quien hasta ese momento nunca había conocido, lo llamó por teléfono y quedó en encontrarse con él en Plaza Esco-rial en Carolina. Continuó indicando que luego de cono-cerlo, le pidió una identificación para saber si era agente de la policía y Viruet Delgado únicamente le mostró su licen-cia de conducir. Indicó que tras verificar su identidad, le abrazó y le expresó que había cometido un error, a lo cual Viruet Delgado le indicó que se había enterado por una noticia en el periódico y que interesaba entregarlo a las autoridades. Posteriormente, en el Cuartel de la Policía de Arecibo, Viruet Camacho alegadamente le relató a Viruet Delgado lo ocurrido en la fecha de los hechos. Viruet Camacho aduce que la confesión o admisiones obtenidas por Viruet Delgado son inadmisibles debido a que éste actuó como funcionario del orden público y no le hizo las adver-tencias de ley correspondientes, en contravención a su de-recho contra la autoincriminación.
En oposición a la solicitud de supresión, el Estado ex-puso que Viruet Delgado no actuó como funcionario del or-den público, por lo cual no tenía la obligación de hacer advertencia de ley alguna. Por otra parte, señaló que un fiscal, personalmente, hizo las advertencias de ley a Viruet Camacho cuando éste fue llevado al precinto de Arecibo y, en tal ocasión, Viruet Camacho no solicitó la asistencia de un abogado, sino indicó que quería hablar con su hermano. Así, sostuvo que la confesión obtenida fue voluntaria e inteligente.
En la vista de moción de supresión celebrada el 30 de enero de 2007, el Ministerio Público presentó el testimonio de Viruet Delgado. Tras evaluar la prueba desfilada, así como los argumentos de las partes, el tribunal de instancia *569 declaró “no ha lugar” a la moción de supresión de evidencia y señaló el caso para juicio.
Inconforme con tal determinación, Viruet Camacho pre-sentó una petición de certiorari y moción en auxilio de ju-risdicción ante el Tribunal de Apelaciones, alegando que nunca renunció a su derecho contra la autoincriminación, por lo cual la confesión era inadmisible. En su recurso, adujo que la prueba presentada por el Ministerio Público fue insuficiente para establecer que se le impartieron las advertencias de ley o que renunció voluntaria, consciente e inteligentemente a su derecho a no autoincriminarse. El foro apelativo denegó la expedición del auto de certiorari. Al así hacerlo, dicho foro indicó que el Ministerio Público descargó su responsabilidád de probar que la confesión obedeció a una renuncia voluntaria, consciente e inteli-gente, por lo cual “la confesión del peticionario, fue con-forme a derecho y que [sic] no incidió el Tribunal de Pri-mera Instancia al denegar la solicitud de supresión de la misma”. Apéndice, pág. 53.
Inconforme aún, Viruet Camacho acudió ante este Tribunal mediante una petición de certiorari y moción en auxilio de jurisdicción. En su petición, Viruet Camacho se-ñala que incidió el foro apelativo al concluir que se le hi-cieron las advertencias de ley correspondientes y al dene-gar la expedición del auto solicitado bajo el fundamento de que había renunciado a su derecho contra la autoincrimi-nación de forma voluntaria, consciente é inteligente.
Expedimos el recurso. Con el beneficio de la compare-cencia de las partes, procedemos a resolver.
H-1
El inicio de la acción penal y los procedimientos que ello desencadena necesariamente suscitan múltiples interro-gantes en cuanto a los derechos que le asisten al sospe-choso de delito en cada etapa. Durante la etapa investiga- *570 tiva, el interrogatorio de testigos, sospechosos y personas particulares que puedan ayudar a esclarecer lo ocurrido son de suma importancia. Sin embargo, existen límites constitucionales y jurisprudenciales que rigen las funcio-nes de los funcionarios del orden público en estos quehaceres. De particular relevancia a la presente contro-versia son las manifestaciones incriminatorias de un sos-pechoso de delito, mientras se investiga el caso, y su admi-sibilidad en el juicio en su contra. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Vol. I, Sec. 2.1, pág. 49.
 De entrada, el derecho a un debido proceso de ley prohíbe el uso de mecanismos de coacción física o mental hacia el sospechoso, con el propósito de obtener declaracio-nes incriminatorias. Así, para que sea admisible, toda de-claración del interrogado debe ser libre y voluntaria. Chiesa Aponte, op. cit., Sec. 2.1, pág. 50. Véanse, además: Art. II, Sec. 2, Const. E.L.A.; Emda. XIV, Const. EE.UU., L.P.R.A. Tomo 1.
Por otro lado, nuestra Constitución y la Constitución de Estados Unidos garantizan el derecho de todo ciudadano contra la autoincriminación. Art. II, Sec. 11, Const. E.L.A.; Emda. V, Const. EE.UU., L.P.R.A., Tomo 1. Sobre el particular, nuestra Constitución establece, de forma ex-presa, que “ [n] adié será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra”. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 327.
Ciertos derechos han sido subsumidos en el derecho contra la autoincriminación, a saber: el derecho de un sospe-choso de la comisión de un delito a permanecer callado, a no incriminarse, a que su silencio no pueda ser utilizado en su contra y a la asistencia de un abogado.(1) El derecho *571 contra la autoincriminación ha sido caracterizado como uno de los “más trascendentales y fundamentales del dere-cho penal y procedimiento criminal que se practica en una democracia como la nuestra”. Pueblo en interés menor J.A.B.C., 123 D.P.R. 551, 561 (1989). Véase, además, Pueblo v. Sustache Torres, 168 D.P.R. 350 (2006). Sobre el particular, el Prof. Ernesto L. Chiesa Aponte señala que “el derecho contra la autoincriminación es la protección más abarcadora que tienen los ciudadanos frente al interroga-torio de los funcionarios del gobierno”. Chiesa Aponte, op. cit., See. 2.3, pág. 69.
Ahora bien, el derecho contra la autoincriminación no es absoluto ni opera automáticamente. Este se activa en la etapa adversativa de una investigación, o sea, cuando el Estado enfoca la investigación en un sospechoso en particular. Cuando los funcionarios del orden público interrogan a un sospechoso, que se encuentra bajo custodia, con el propósito de obtener declaraciones incriminatorias y sin hacerle las debidas advertencias de ley, cualquier declaración que haga el sospechoso será inadmisible. Dicho mecanismo pretende controlar la conducta policiaca, dirigida a la obtención de declaraciones incriminatorias sin antes informar al sospechoso sobre sus derechos constitucionales. Véanse: Chiesa Aponte, op. cit., See. 2.3, págs. 83 — 85; D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 8va ed., San Juan, Inst, para el Desarrollo del Derecho, 2007, págs. 33-35; Pueblo v. Sustache Torres, ante.
*572 Por el contrario, una admisión o confesión(2) que no es producto de un interrogatorio, o sea, cuando es ofrecida voluntariamente o de forma espontánea, es admisible en evidencia por estar ausente el elemento de coacción. En ese contexto no se le puede requerir al Estado que se le hayan hecho las advertencias de ley antes de que la persona, haga la declaración incriminatoria. Incluso, cuando la persona relata hechos delictivos, de forma espontánea y voluntaria, el funcionario del orden público ni siquiera tiene la obligación de interrumpirle para hacerle las advertencias de ley. Sólo tendría la obligación de hacerlo si luego procede a interrogarle. Nevares-Muñiz, op. cit, pág. 39.
Del mismo modo, una confesión voluntaria hecha por un sospechoso que se encuentra bajo custodia y quien ha sido advertido de los derechos constitucionales que le cobijan es admisible, siempre que sus declaraciones no sean producto de un interrogatorio y de conducta coercitiva de parte de funcionarios del orden público. Pueblo v. López Guzmán, 131 D.P.R. 867 (1992). Después de todo, las confesiones o admisiones voluntarias son una práctica deseable y favorecida tanto en nuestro ordenamiento como en el nivel federal. Véase Chiesa Aponte, qp. cit., See. 2.3, págs. 83-85; Nevares-Muñiz, op. cit ; Pueblo v. Sustache Torres, ante.
Aun cuando el derecho contra la autoincriminación puede ser renunciado válidamente, ya sea mediante una confesión o admisión espontánea o una renuncia ex-presa de sus derechos, es necesario demostrar ante el foro judicial que la renuncia fue voluntaria, consciente e inteligente. En reiteradas ocasiones hemos señalado que, *573 al evaluar si la renuncia es válida, debemos determinar, primeramente, si el abandono del derecho es voluntario en el sentido de que sea producto de una elección libre y deliberada. Es decir, que no medie intimidación, coacción o violencia de parte de los funcionarios del Estado. En se-gundo término, es preciso que la renuncia sea consciente e inteligente, en tanto el sospechoso sea informado adecua-damente sobre el privilegio constitucional contra la autoin-criminación y tenga pleno conocimiento del derecho aban-donado así como de las consecuencias que acarrea dicha decisión. Es de particular importancia advertirle que cual-quier manifestación podrá ser usada en su contra en un proceso criminal. Pueblo v. Medina Hernández, 158 D.P.R. 489 (2003); Pueblo v. Rivera Nazario, 141 D.P.R. 865 (1996); Pueblo v. Ruiz Bosch, 127 D.P.R. 762 (1991); Pueblo en interés menor J.A.B.C., ante.
De lo anterior se colige que, con el propósito de salvaguardar el derecho contra la autoincriminación, el Estado tiene la obligación de informar, de forma clara, al imputado de delito las advertencias de ley correspondientes, a saber, que tiene el derecho a permanecer callado, que cualquier manifestación que haga podrá ser utilizada como evidencia en su contra, que tiene el derecho a consultar con un abogado de su selección antes de decidir si declara o no y contar con la asistencia de éste durante el interrogatorio, y que, de no tener dinero para pagar un abogado, el Estado tiene la obligación de proveérselo. Pueblo v. Medina Hernández, ante; Pueblo v. Rivera Nazario, ante; Pueblo v. López Guzmán, ante; Pueblo en interés menor J.A.B.C., ante; Miranda v. Arizona, 384 U.S. 436 (1966).
No obstante, si bien el Estado tiene la obligación de ha-cerle las advertencias de ley correspondientes, según des-tacamos anteriormente, tal deber se activa únicamente cuando la investigación asume un enfoque acusatorio y ad-versativo, o sea, se enfoca en un sospechoso particular. *574 Pueblo v. López Guzmán, ante; Chiesa Aponte, op. cit., Sec. 2.3, págs. 82 y 84.
En resumen, hemos establecido que una confesión o admisión es inadmisible, por ser violatoria del derecho contra la autoincriminación, cuando se satisfacen todos los requisitos siguientes: (1) que al momento de obtenerse la declaración impugnada ya la investigación se haya centralizado sobre la persona en cuestión y ésta sea considerada como sospechosa de la comisión de un delito; (2) que al momento de prestar la declaración en cuestión el sospechoso se encuentra bajo la custodia del Estado; (3) que la declaración haya sido producto de un interrogatorio realizado con el fin de obtener manifestaciones incriminatorias, y (4) que no se le haya advertido sobre los derechos constitucionales que nuestro ordenamiento le garantiza. Pueblo v. Medina Hernández, ante; Pueblo v. López Guzmán, ante; Pueblo en interés menor J.A.B.C., ante; Pueblo ex rel. F.B.M., 112 D.P.R. 250 (1982).
Ahora bien, al evaluar si la renuncia al derecho contra la autoincriminación es válida, los tribunales debemos evaluar la totalidad de las circunstancias, entre éstas, las circunstancias personales y particulares del sospechoso, el periodo de tiempo que estuvo bajo custodia policiaca antes de prestar la confesión, la conducta policiaca mientras estuvo bajo custodia y si efectivamente estuvo o no asistido por un abogado al confesar. Pueblo v. Medina Hernández, ante; Pueblo v. Rivera Nazario, ante; Pueblo en interés menor J.A.B.C., ante; Pueblo en ex rel. F.B.M., ante; Nevares-Muñiz, op. cit., pág. 37.
Si bien hemos destacado que no existe un lenguaje talismánico para efectuar las advertencias de ley, éstas deben hacerse de forma eficaz con el propósito de que el acusado entienda lo que implica su renuncia. Así, pues, una lectura somera y automática de las advertencias de ley correspondientes podría resultar insuficiente si no se in- *575 daga sobre la voluntariedad de la confesión ni se evalúa la totalidad de las circunstancias que la rodearon. Pueblo v. Medina Hernández, ante; Pueblo v. Rivera Nazario, ante; Pueblo en interés menor J.A.B.C., ante; Pueblo ex rel. F.B.M., ante.
Es preciso destacar que el peso de la prueba recae sobre el Estado, a quien le corresponde probar que la confesión o admisión efectuada constituye una renuncia válida al de-recho contra la autoincriminación y, por lo tanto, es admi-sible en evidencia. Para que un tribunal pueda determinar, a base del criterio de la “totalidad de las circunstancias”, si dicha renuncia fue voluntaria, consciente e inteligente, el Estado debe presentar prueba tendente a demostrar cuáles fueron las advertencias que se le hicieron al sospechoso y cuáles eran las circunstancias en las cuales éste prestó la confesión. Pueblo v. Medina Hernández, ante; Pueblo v. García Ciuro, 134 D.P.R. 13 (1993); Pueblo v. Ruiz Bosch, ante; Pueblo v. Pellot Pérez, 121 D.P.R. 791 (1988); Pueblo ex rel. F.B.M., ante.
La admisibilidad de una confesión es determinada preliminarmente por el juez de instancia, quien tras escuchar la prueba que tengan a bien presentar las partes y evaluarla en ausencia del Jurado, determina si ésta es admisible. Si el juez concluye que la confesión es admisible, al acusado le asiste el derecho de presentar prueba, durante la continuación del proceso, tendente a demostrar que la confesión fue obtenida en violación a su derecho a no incriminarse o cualquier otra defensa que estime pertinente. Pueblo v. Rivera Nazario, ante. Véase, además, Nevares-Muñiz, op. cit., págs. 38-39.
II
En su recurso, Viruet Camacho argumenta que su her-mano, Raymond Viruet Delgado, es un guardia de correc-ción y actuó como funcionario del orden público al *576 “arrestarle”. Sostiene que éste no le hizo las advertencias de ley de rigor cuando lo “arrestó” y que, al así proceder, violó su derecho contra la autoincriminación y el debido proceso de ley. Como consecuencia de ello, alega que toda declaración incriminatoria que él hizo a Viruet Delgado es inadmisible; señala, además, que las posibles admisiones hechas antes de su “arresto”, también deben excluirse por-que al realizarlas desconocía que su hermano era funcio-nario del orden público. Aduce que éste tenía la obligación de identificarse como tal inmediatamente, indicarle su in-tención de entregarlo a las autoridades y advertirle sobre su derecho contra la autoincriminación.
Por otra parte, Viruet Camacho alega que el Ministerio Público no ha demostrado cuáles fueron las advertencias de ley específicas que le fueron impartidas por el fiscal a cargo del caso. A su juicio, el Ministerio Público no cumplió con la cantidad de prueba requerida para probar que la renuncia al derecho contra la autoincriminación y, por lo tanto, la alegada confesión, fue obtenida válidamente. En particular, señala que el único testimonio ofrecido por el Estado fue el de Raymond Viruet Delgado, quien no estuvo presente cuando se le hicieron las alegadas advertencias de ley.
De entrada, es preciso determinar si Raymond Viruet Delgado actuó como un “funcionario del orden público” al “arrestar” a Viruet Camacho.
En su Art. 8, la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974 (4 L.P.R.A. see. 1126), según enmendada, creó un cuerpo de oficiales correccionales, responsables de custodiar a los confinados, conservar el orden y la disciplina en las instituciones correccionales, proteger a la persona y la propiedad, supervisar y ofrecer orientación social a los confinados, y desempeñar aquellas funciones asignadas por el Administrador de Corrección. Entre otros asuntos, se les confirió a los oficiales de corrección la facultad de “perse- *577 guir a confinados evadidos y liberados contra quienes pesa una orden de arresto emitida por la Junta de Libertad Bajo Palabra y prenderlos a cualquier hora, y en cualquier lu-gar”, utilizando los mismos medios autorizados a los agen-tes del orden público pará realizar un arresto. Id.
En Pueblo v. Velazco Bracero, 128 D.P.R. 180 (1991), reconocimos que nuestra Asamblea Legislativa ha creado otros cuerpos policiales, además de la Policía de Puerto Rico, cuya función principal es proveer seguridad a sectores particulares que así lo requieren. Estos, al amparo de las leyes especiales que habilitan sus cargos, ostentan la facultad de efectuar arrestos en el desempeño de sus funciones. Entre tales cuerpos policiales, designamos a los oficiales de corrección de la Administración de Corrección. Ahora bien, en dicha ocasión también destacamos que la autoridad para efectuar arrestos se confiere “bajo las circunstancias descritas” en cada una de las leyes especiales en cuestión. Dicho de otra manera, la autoridad de cada funcionario del orden público para realizar arrestos se circunscribe a los mandatos de la ley particular que creó su cargo y mediante la cual se delimitan sus responsabilidades y facultades.
A base de la normativa antes expuesta, en esa ocasión resolvimos que un policía de la Administración de Vetera-nos es un funcionario del orden público facultado para rea-lizar arrestos al amparo de nuestra Regla 11 de Procedi-miento Criminal, 34 L.P.R.A. Ap. II, únicamente en relación con actividad delictiva llevada a cabo en los pre-dios de la Administración de Veteranos. Sin embargo, éste debe procurar que una vez arreste al sujeto, se le notifique a. las autoridades pertinentes para la tramitación del caso conforme a los preceptos constitucionales correspon-dientes. En dicho caso, el policía de la Administración de Veteranos se comunicó con la Policía de Puerto Rico, quien tramitó el caso contra el sujeto.
*578 Posteriormente, en Pueblo v. Rosario Igartúa, 129 D.P.R. 1055 (1992), concluimos que, distinto a lo resuelto en Pueblo v. Velazco Bracero, ante, un guardia de seguri-dad de la Autoridad de Tierras no es un funcionario del orden público para efectos de la referida Regla 11 de Pro-cedimiento Criminal, 34 L.P.R.A. Ap. II, porque la ley de dicho ente gubernamental no le confiere expresamente la autoridad para realizar arrestos. Como consecuencia, éste sólo puede realizar arrestos al amparo de la Regla 12 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual faculta a un ciudadano particular a arrestar a una persona por un delito cometido o que se hubiese intentado cometer en su presencia, o cuando se hubiere cometido un delito grave y la persona tiene motivos fundados para creer que la persona arrestada lo cometió. Véase Chiesa Aponte, op. cit., 1993, Vol. Ill, Sec. 21.4, págs. 33-34. Sobre el particular, el profesor Chiesa señala que, conforme a la jurisprudencia interpretativa, resulta razonable inferir que es funcionario del orden público aquel que tiene facultad en ley para rea-lizar arrestos. Id., pág. 34. Sin embargo, ello por sí solo no le extiende una facultad irrestricta para arrestar. Veamos.
Del Art. 8 de la Ley Orgánica de la Administración de Corrección, antes reseñado, surge que los oficiales de corrección únicamente tienen autoridad para realizar un arresto en el desempeño de sus funciones como tal. Tomando en cuenta lo resuelto por este Tribunal en ocasiones anteriores, es forzoso concluir que si bien un oficial de corrección técnicamente tiene la autoridad para efectuar un arresto, tal facultad se extiende a los periodos en los cuales descarga sus funciones como oficial de corrección y, además, se refiere únicamente al arresto de prófugos de la justicia. Cualquier arresto efectuado por un oficial de corrección, fuera de su función como tal, constituye un arresto por una persona particular cuya validez queda sujeta al cumplimiento con la Regla 12 de Procedimiento Criminal, ante.
*579 Del expediente ante nuestra consideración surge clara-mente que Viruet Camacho no era un confinado ni un pró-fugo de una institución penal. Ni siquiera existía una orden de arresto en su contra. Por lo cual, Raymond Viruet Delgado carecía de autoridad para arrestarlo al amparo de la Regla 11 de Procedimiento Criminal, ante, en carácter de funcionario del orden público. En las circunstancias parti-culares de este caso, Viruet Delgado excedió las facultades que le concede el Art. 8 de la Ley Orgánica de la Adminis-tración de Corrección, ante.
En vista de que Viruet Delgado carecía de autoridad para arrestar a Viruet Camacho al amparo de la citada Regla 11 de Procedimiento Criminal, se suscita una inte-rrogante en torno a la validez del arresto efectuado. Con-secuentemente, nos corresponde determinar si la actuación de Raymond Viruet Delgado constituyó un arresto válido por una persona particular al amparo de la Regla 12 de Procedimiento Criminal, ante. De así serlo, Raymond Vi-ruet Delgado no tenía la obligación de hacerle las adver-tencias de ley, sino de entregarlo inmediatamente a las autoridades.
Del testimonio de Raymond Viruet Delgado surge que el 3 de abril de 2006 su suegro le mostró una noticia publi-cada en un periódico de circulación general, en la cual se le imputaba a Viruet Camacho el asesinato de su compañera consensual. De este modo, Viruet Delgado supo que su her-mano había sido señalado como el posible autor de un de-lito grave. A raíz de dicho descubrimiento y tras varias gestiones, logró comunicarse con Viruet Camacho, a quien admitió nunca había conocido. Tras encontrarse con Viruet Camacho en un lugar público, e identificarse como su her-mano, Viruet Camacho le pidió que le mostrara una iden-tificación para cerciorarse que no era un policía. Una vez Viruet Delgado le mostró su licencia de conducir, Viruet Camacho le indicó que “había cometido un error”. Después de escuchar dicha admisión, Viruet Delgado dijo a Viruet *580 Camacho que tenía que entregarse a las autoridades. Luego procedió a esposar a Viruet Camacho, lo trasladó al Cuartel de la Policía de Manatí y lo entregó a las autoridades.
En resumen, en ese momento no existía duda de que se había cometido un delito grave, a saber, el asesinato de Katherine Oliver Valentín. Viruet Delgado, además, tenía información por los periódicos de que las autoridades poli-cíacas estaban tratando de localizar a su hermano en rela-ción con dicho delito. Por último, su hermano le informó que había cometido “un error”. Opinamos que en ese mo-mento Viruet Delgado tuvo los “motivos fundados” que re-quiere la Regla 12(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, para que se pueda llevar a cabo un arresto por un ciudadano particular.
1 — 1 I — i I — 1
¿Actuó correctamente Viruet Delgado? Entendemos que sí. La aseveración hecha por Viruet Camacho a los efectos de que había cometido “un error” fue completamente voluntaria. Incluso, su expresión ni siquiera fue la res-puesta a una pregunta formulada por Viruet Delgado. Ciertamente, no se trata de una admisión inadmisible por-que cuando Viruet Camacho hizo tal declaración no se en-contraba bajo custodia ni era interrogado por un funciona-rio del orden público. Adviértase que en vista de que Viruet Delgado no actuó como un funcionario del orden público, y por ser considerado como un ciudadano particular, no tenía la obligación de hacer las advertencias de ley. A esos efec-tos, la profesora Nevares-Muñiz destaca que no es necesa-rio hacer las advertencias de ley cuando las manifestacio-nes se hacen a una persona particular. Nevares-Muñiz, op. cit, pág. 39.
Luego de su arresto, no existe prueba tendente a demos-trar que Viruet Camacho hizo alguna otra declaración in- *581 eliminatoria desde el momento en que fue esposado hasta su llegada al Cuartel de la Policía de Manatí, al cual fue transportado por su hermano. Tampoco así mientras fue transportado en la patrulla desde el cuartel de Manatí al de Arecibo.
Una vez arribaron al Cuartel de la Policía de Arecibo, el fiscal Ayende, en presencia del agente Montalvo, le leyó las advertencias de ley a Viruet Camacho. Cuando Viruet Camacho llegó al cuartel, el fiscal Ayende le preguntó en pre-sencia de Viruet Delgado, si deseaba que se le hicieran las advertencias nuevamente, a lo cual Viruet Camacho indicó que las había entendido completamente. Viruet Camacho expresó al fiscal Ayende y al agente Montalvo que no les iba a decir nada; que sólo hablaría con su hermano. Ante tal declaración, el fiscal y el agente se retiraron del cuarto y Viruet Delgado le preguntó a Viruet Camacho qué había sucedido. Es ahí que Viruet Camacho le confiesa en detalle a su hermano lo sucedido. Viruet Delgado declaró que, en ese momento, Viruet Camacho indicó que contaría al fiscal y al agente todo lo que le había relatado, pero cuando éstos entraron nuevamente al cuarto, en lugar de relatarles los hechos, solicitó la asistencia de un abogado. No surge de la prueba que, posterior a ese momento, Viruet Camacho haya hecho alguna otra declaración incriminatoria o haya sido interrogado por el fiscal o algún agente.
Así, pues, surge que el Fiscal a cargo del caso le hizo las advertencias de ley a Viruet Camacho cuando llegó al cuar-tel y éste indicó haberlas entendido completamente.
El expediente está huérfano de prueba que sustente la posición de Viruet Camacho. Por el contrario, el testimonio de un testigo que merezca crédito es prueba suficiente de cualquier hecho. Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV. Del testimonio de Viruet Delgado surge que el fiscal pre-guntó a Viruet Camacho, en presencia de él, si quería que le hicieran nuevamente las advertencias de ley, y éste des- *582 tacó que no necesitaba que se las hicieran otra vez porque las había entendido bien. Así rechazó el ofrecimiento del fiscal de impartírselas nuevamente en presencia de su hermano. De lo anterior, determinamos que Viruet Camacho fue advertido debidamente de sus derechos constitu-cionales.
Si bien es cierto que una vez el sospechoso solicita la asistencia de un abogado, cualquier interrogatorio debe suspenderse inmediatamente y toda manifestación posterior es inadmisible por ser violatoria del derecho contra la autoincriminación, tal no es la situación en el caso de autos. Si el sospechoso, por iniciativa propia, opta por ha-cer declaraciones sin asistencia de un abogado, a pesar de las advertencias al respecto, no cabe hablar de una viola-ción a su derecho constitucional a no autoincriminarse. Chiesa Aponte, op. cit, Vol. I, See. 2.3, pág. 97. Ello en vista de que, conforme hemos reiterado, un sospechoso puede renunciar válidamente a tales protecciones constitucionales. Por lo cual, la exclusión de este tipo de declaración descansa en una evaluación de los hechos par-ticulares de cada caso.
En el caso de autos, Viruet Camacho conocía a cabalidad el derecho que le asistía a permanecer callado y a obtener la asistencia de un abogado, y aun así, optó por hacer ma-nifestaciones a su hermano en torno a los hechos por los cuales se le imputa el delito de asesinato. De modo que renunció de forma voluntaria, consciente e inteligente a su derecho contra la autoincriminación.
Por otra parte, de la exposición narrativa de la prueba surge que el fiscal Ayende no estuvo presente cuando Vi-ruet admitió los hechos. Tampoco estuvo presente el agente Montalvo. Ninguno de los dos se encontraba en el cuarto donde conversaron Viruet Camacho y Viruet Delgado. De esto se puede concluir que el fiscal y el agente Montalvo no interrogaron a Viruet Camacho con el propósito de que con-fesara o hiciera declaraciones incriminatorias. No hubo *583 coacción de parte de los funcionarios públicos. De la prueba vertida ante el tribunal de instancia tampoco surge que éstos hayan instado a Raymond Viruet Delgado a extraer información a Viruet Camacho, sino por el contrario, éste indicó de forma voluntaria que quería hablar con su her-mano a solas. Cuando el fiscal y el agente volvieron a en-trar al cuarto, fue que Viruet Camacho solicitó la asisten-cia de un abogado, esa vez en presencia de Viruet Delgado. Del expediente no surge que luego de ello, Viruet Camacho haya hecho otras declaraciones incriminatorias o se le haya sometido a un interrogatorio.
Tomando en cuenta lo anterior, concluimos que estamos ante una confesión o admisión voluntaria que no fue pro-ducto de conducta coercitiva de parte del Estado ni que fue obtenida durante un interrogatorio efectuado por funciona-rios del orden público, elementos necesarios para tornar una declaración incriminatoria en evidencia inadmisible. Viruet Camacho hizo las declaraciones incriminatorias a una persona particular. Siendo ello así, dichas declaracio-nes son admisibles, aun cuando sean incriminatorias, por-que no está presente el elemento de coacción necesario para su exclusión. Arizona v. Mauro, 481 U.S. 520 (1987); Oregon v. Elstad, 470 U.S. 298 (1985). Incluso, una confe-sión hecha libremente a un funcionario del orden público, tras las advertencias de ley, es admisible porque no existe el elemento de coacción necesario para que se configure una confesión y así excluirle bajo el derecho contra la autoincriminación. Pueblo v. Sustache Torres, ante.
Adviértase, además, que “[n]o se activan las salvaguardas de Miranda cuando el sospechoso hace declaraciones incriminatorias a terceros que no son agentes, como a parientes, amigos o conocidos (Escolio omitido.) Chiesa Aponte, op. cit., Vol. I, See. 2.3, pág. 88. Véanse: Pueblo v. López Guzmán, ante; Pueblo v. Rodríguez Martínez, 100 D.RR. 805 (1972). Tal norma también ha sido re- *584 conocida en el ámbito federal. Arizona v. Mauro, ante; U.S. v. Kimbrough, 477 F.3d 144 (4to Cir. 2007); U.S. v. Gaddy, 894 F.2d 1307 (11mo Cir. 1990); U.S. v. Vazquez, 857 F.2d 851 (1er Cir. 1988). Las declaraciones incriminatorias efec-tuadas en ese contexto no están sujetas a exclusión bajo el derecho contra la autoincriminación. Así, cualquier mani-festación hecha voluntariamente por un sospechoso a per-sonas particulares, incluyendo familiares, son. admisibles en evidencia. Nevares-Muñiz, op. cit., pág. 39.(3)
IV
Es bien sabido que el foro primario es el que tiene la oportunidad de ver y observar a los testigos y su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, ademanes, dudas y vacilaciones, e ir formando. gradualmente en su conciencia la convicción de si dicen o no la verdad. López v. Dr. Cañizares, 163 D.P.R. 119 (2004); Argüello v. Argüello, 155 D.P.R. 62 (2001). Consecuentemente, los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realizan los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614 (2002); Argüello v. Argüello, ante.
En el caso ante nuestra consideración, el tribunal de instancia quedó convencido, a base del testimonio vertido por Viruet Delgado, que se efectuaron las advertencias de ley y que Viruet Camacho renunció de forma voluntaria, consciente e inteligente a su derecho contra la autoincriminación. Dicho proceder no fue arbitrario o caprichoso. Indudablemente, Viruet Camacho sabía que era sospechoso del delito de asesinato. También sabía que *585 cualquier declaración que hiciera podría usarse en su contra. Aun así optó por contarle lo sucedido a su hermano. Tampoco albergamos duda de que conocía su derecho a la asistencia de un abogado, ya que finalmente ejerció dicho derecho, a pesar de que lo hizo después de haberle hecho a su hermano las declaraciones cuya exclusión denegó el tribunal de instancia y hoy réafirmamos.
Por lo cual, no erró el foro primario al declarar “sin lu-gar” la moción de supresión de confesión.
V
En mérito de lo antes expuesto, procede dictar sentencia confirmatoria de la determinación del tribunal de primera instancia declarando “no ha lugar” a la moción de supre-sión de evidencia y devolver el caso ante dicho foro para la continuación de los procedimientos en conformidad con lo aquí resuelto.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta concurrió con el resultado sin opinión escrita.

 Aun cuando el derecho a un debido proceso de ley y el derecho a la asistencia de un abogado también constan expresamente en nuestra Constitución —véase Art. *571 II, See. 2, Const. E.L.A., L.P.R.A., Tomo 1— en el contexto del interrogatorio de un sospechoso, ambos son analizados a la luz del privilegio contra la autoincriminación. De igual forma, el derecho a la asistencia de abogado conferido por la Enmienda Sexta de la Constitución de Estados Unidos se refiere propiamente al inicio formal de la acción penal, o sea, después de la denuncia o acusación. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Sec. 2.3, pág. 83. En la etapa investigativa, rigen los preceptos de Miranda v. Arizona, 384 U.S. 436 (1966), y su progenie.

 La Prof. Dora Nevares-Muñiz distingue los conceptos de confesión y admi-sión de la manera siguiente: la admisión se refiere a aquellas manifestaciones sobre un hecho específico o sobre algún elemento del delito, mientras la confesión es la manifestación de que se cometió el delito, haciendo referencia a todos los elementos del delito y el acto delictivo. D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 8va ed., San Juan, Inst, para el Desarrollo del Derecho, 2007, pág. 35.

 Nótese que ello no implica que el Estado puede usar a una persona particular para extraer una declaración incriminatoria y así evadir las protecciones constitu-cionales que cobijan al sospechoso. Nevares-Muñiz, op. cit., pág. 39.